[ Filed June 10, 1890. ]

## ERNEST HAASE, Respondent, *v.* THE OREGON RAILWAY AND NAVIGATION CO., Appellant.

EVIDENCE—HEARSAY.--In an action against a railroad company to recover damages for personal injuries, it is not competent for the plaintiff to give in evidence the statements and declarations of a stranger in relation to the departure or movements of the defendant's trains. Such evidence is hearsay.

PASSENGER AND CARRIER.—A person who has purchased no ticket and paid no fare who goes to a caboose attached to a freight train, and, without the knowledge of those in charge of such train, attempts to get into said car at a place where the railroad company is not accustomed to receive passengers, is not a passenger; and if he is injured in such attempt to board the train, and those in charge of it have no knowledge of his presence, the company is not liable for the injury.

CONTRIBUTORY NEGLIGENCE.—A person who goes in the night-time in the midst of a car yard, and at a place where the railroad company is not accustomed to receive passengers, and without the knowledge of those in charge of a freight train standing there, attempts to enter the caboose attached to such freight train, and is injured, is guilty of contributory negligence and cannot recover for such injury.

APPEAL from Wasco county: J. H. BIRD, judge.

This is an action to recover damages for alleged negligence. It is charged in the complaint that the plaintiff desiring to go to Hood River, on the line of the railroad

owned and operated by the defendant between The Dalles and Portland, applied at the office of the company at The Dalles for the purpose of purchasing a ticket to Hood River and to gain information as to when a train would leave for said station; that the office was closed, and that thereupon a man whose name the plaintiff does not know, but whom the plaintiff believes to be an agent of the defendant, directed the plaintiff to defendant's train at said Dalles City; that thereupon the plaintiff proceeded to a train which was standing still, and was in the act of stepping on one of the cars of the train while the same was standing still at the defendant's depot, a usual place of stopping, when, without warning to the plaintiff or any signal, the train suddenly and rapidly backed up; that by reason of said negligent and careless acts of the defendant, the plaintiff was thrown from the platform of said car to the ground with great force and was thrown under the wheels of the car, which ran upon and over the plaintiff, crushing his left foot below the knee, necessitating the amputation thereof. The plaintiff lays his damages at $50,000.

The answer denies each material allegation of the complaint and then alleges contributory negligence on the part of the plaintiff as the proximate cause of the injury, which was denied by the reply. The plaintiff had a verdict and judgment for $3,500, from which this appeal is taken.

*Zera Snow,* for Appellant.

*A. S. Bennett* and *J. L. Story,* for Respondent.

STRAHAN, J., delivered the opinion of the court.

During the trial numerous exceptions were taken by the appellant, a few only of which it will be necessary to notice. At the conclusion of the evidence on the part of the plaintiff, the defendant moved for a non-suit, which was overruled and an exception taken. Ernest Haase, the plaintiff, testified in his own behalf, in substance: That he had been living at Trout Lake, in Washington Territory,

for about five months; his occupation was that of a black-·
smith and farmer; had been employed by Bogurt and
Sukesdorf, and just before the accident had been in the
employ of Borthwick and Frame at a saw-mill in Wash-
ington Territory; had worked there two or three days; he
came over from Washington Territory on the day preceding
the night of the injury with a barge load of ties, which,
being unloaded, in the course of which he had torn his
clothes, he concluded to go to Hood River to get some.
clothes which had been left there by him, having in the
meantime bought a new suit; that he went to the Umatilla
House at Dalles City to buy a ticket, but the office was
closed; this was about half past seven in the evening; he
was told that no passenger train went out that night, nor
before half past three the following morning, but that a
freight train would be going out that evening about half
past ten and that it would start from the freight depot.
It did not appear by whom this information was given to
the plaintiff, and the same was objected to by the defend-
ant, which objections were overruled and an exception
taken. This exception will be noticed in connection with
some others presenting substantially the same principle.
The plaintiff further testified that some man went with
him from the Umatilla House toward Umatilla Junction,
up the river, where there were several tracks and some
cars standing, but he could not tell what kind of buildings
he saw; that he went a couple of hundred meters up the
direction spoken of to where the cars were, and to the
place where the man showed him. That part of this
evidence which relates to the place pointed out to the
plaintiff by this unknown man was admitted over the
defendant's objection and it was also excepted to. The
witness further testified: There was one car there and a
full train to which was attached an engine; smoke was
coming out from the engine; that he undertook to get on
the train; he stepped with his right foot on the steps,
when the train gave a lurch, throwing him off under the
cars; immediately it went forward and ran over his left

foot and the heel of his right; that the train was not in motion when he first saw it, but almost immediately upon putting his foot upon the steps to get on to the car, the train gave a sudden lurch backwards, and it went about a car's length; does not know whether he was holding on to the iron when trying to board the car or not; that the backward motion threw him off his balance; that the train having backed about a car's length, started forward, and the forward motion threw him under the car, and his foot was crushed; the train pulled out, leaving him lying on the ground, and three or four minutes after he fainted away, and has no recollection of when his foot was amputated, but he was conscious for three or four minutes after the amputation, and there were some people around him before he fainted, among them some one who spoke German, but he does not know who they were; that it was ten or half past ten when he undertook to get on this car; that he intended to get on the train to go to Hood River to get his clothes; that he intended to pay his fare; that the car he attempted to get on was a caboose car; that he heard no bell rung or whistle blown before the train started; that after he was run over the train went on to Hood River.

On his cross-examination the witness testified: That it was half past seven or eight when he went to the Umatilla House to get the ticket; that he was alone; that he stayed there about five minutes, and from there went to take a walk through the town; he was alone; he went from the Umatilla House along the track and turned to the right, where there was a butcher-shop; stayed there a quarter of an hour or a little longer; he knew no one there; went back down the railroad track and down the street; he met somebody and went back again with this person; does not know the place to which he went, but had some port wine; the place was two or three streets from where the butcher-shop stands, on the street leading to the brewery; the name of the man with whom he drank was Keller; he stayed in the saloon about ten minutes; that no one was there but

the bar keeper. He went on back to the Umatilla House, parting with Keller on the street, and from there he went to the train, going up the street upon which the railroad is on; he did not stop on his way back to the Umatilla House, but came on down the railroad, walked over to the end of the Umatilla House and then returned to take the train, going up the street the railroad was on; that he first met Keller before going to drink with him on the street the railroad track is on; that he had never seen him before; that he was talking German with some one at the time, and he, the witness, took part in the conversation; that he had drank some beer in the early part of the evening at the Wolf Gang saloon, just before going to the Umatilla House the first time, a short time before half past seven; he and three others drank a quart of beer, which was all the liquor he had drank; this was not at the same saloon at which he drank with Keller; from the time he left the Umatilla House to the time of his return after he had taken his walk and had his wine with Keller it was probably half an hour; that he almost went immediately back from the Umatilla House to the train, taking the sidewalk a part of the way and the wagon road the other; going up he did not see any locomotive; that they first went up on the right-hand side of the track, crossed over some railroad tracks and went the remainder of the distance on the river side of the track, from which point he undertook to get on to the caboose; that there was an engine on one side of him, to his right-hand; there was another car standing between him and the caboose which he attempted to get on, around which he had to go; the caboose which he attempted to get on was about twenty car lengths from the engine; that he attempted to get on the front of the caboose; the caboose was at the rear end of the train, and was attached to the train when he attempted to board it; does not recollect whether he had hold of anything with either hand when attempting to get on or not, the train went so quickly, but it moved back the first time from one-half to a car's length and then moved forward and the train left; the

movement backward was a quick jerk, and all at once it started ahead and went on and he saw no more of it; it moved forward and he was thrown under the car; that when the backward movement of the train threw him off his balance, he made an effort to catch hold of something, clutched at the bars and slid off; the forward movement of the car after it had backed some distance was quick, and before he knew anything he was hurt; that the only time that he drank with Keller that evening was the wine he took; no one was present, except the bar keeper, Keller and himself; was quite sure he did not take beer; does not know how long after he was hurt till he was picked up; he cried out and somebody spoke German to him; that was before he fainted and after he was hurt; the next thing he remembered was when the doctor tried to call him after his leg had been taken off; it was the following morning; that the man who spoke German to him asked him what was the matter, and told him the doctor would be there pretty soon; when he undertook to get on the caboose he did not see any other trains in the yard.    Witness further testified:  He has no recollection of the bar keeper refusing to give him any more drink because he was drunk, when at the bar with Keller, or any recollection of anything of the kind having occurred; that the last time he left the Umatilla House to go to the train he was in company with some other person, he does not know whom, and that they parted at the train, this person leaving while he, the witness, was performing a call of nature; that he did not stop in on the way up from the Umatilla House, but walked leisurely on; he is sure the office was closed at half past seven when he went to buy a ticket, and that from that time to the time when he attempted to board the train about three hours only had elapsed.

Other evidence tends to show that the defendant company had been in the habit of carrying passengers on freight trains and charging fare therefor, and that they had been in the habit of taking such passengers aboard the train at the freight depot, which is four or five blocks

east of Umatilla House; that there was a building there and more than one railroad track; that the distance from the Umatilla House is about fifteen hundred feet; only knows who was operating the road by information; that if a person wanted to ride he had to go to the freight house and get on to the caboose.

The plaintiff also introduced evidence tending to prove that after the injury he was found lying between two tracks in the freight yard, which is along side of the freight depot from twenty to thirty feet from it and to the north; that there were three side tracks between the freight depot platform and where the plaintiff was lying. This is the substance of all the evidence on the part of the plaintiff.

1. The first question to which our attention will be directed is the appellant's exception to that part of the plaintiff's evidence in relation to what was told him at the Umatilla House and what the unknown man said to him in relation to the movements of the defendant's trains, etc. The purpose of this evidence is not very apparent, but by it, I think, the plaintiff sought to place before the jury the information upon which he acted in relation to the defendant's trains and to account for his going to the yard where he was hurt at the late hour of the night when the accident occurred. It is difficult to see how the unauthorized acts or words of a stranger, who is not shown to have any connection whatever with the defendant company, could affect or bind it; and yet it is perfectly obvious from the whole tenor of this evidence that such was its purpose. What effect the jury permitted it to have upon their deliberations we cannot know, but there can be no doubt it was prejudicial to the defendant. The plaintiff was charged with contributory negligence, and one effect of this evidence was, to some extent, to account for his presence in the defendant's car yard at an unusual hour of the night and under circumstances more or less dangerous, and it may be to relieve him from blame in being there under the circumstances detailed by the plaintiff; but in no view

that has been presented to the court was the evidence competent.

2.   But the defendant's motion for a non-suit presents a still more serious question, and imposes the delicate duty upon the court of passing on the plaintiff's evidence and determining whether or not it tended to prove a case · sufficient to be submitted to the jury.   The defendant, if liable at all, is liable on the ground of negligence; that is, it must have violated some duty which it owed to the plaintiff, and the plaintiff must have been free from any fault which contributed to the injury of which he complains.   Looking at the plaintiff's complaint alone, and it is difficult to say that it contains a charge of negligence. It is clear that it contains no direct charge of that kind. The fact that the plaintiff proceeded to a train which was standing still and was in the act of stepping on one of the cars of the train while the same was standing still at the defendant's depot, a usual place of stopping, when, without warning to the plaintiff or any signal, the train suddenly and rapidly backed up, does not seem to me to be enough.   It is true the plaintiff desired to go as a passenger to Hood River, and went to the car for that purpose, but it does not anywhere appear that the car was at the place where the evidence shows the defendant was accustomed to receive passengers on the freight trains.

But waiving the question of pleading altogether, is the evidence sufficient?   The defendant being a common carrier was bound to receive all persons as passengers who wished to travel on its trains and who complied with its regulations in relation to fare; but it was not bound to receive passengers otherwise than at stations or places provided for that purpose.   If it was in the habit of receiving passengers at its freight depot at The Dalles, then, whenever one of its trains which carried passengers was drawn up at that place and ready to depart for any point on the road, it was bound to receive and transport to their destination all persons offering themselves as passengers who had tickets or were ready to pay the fare, and in the performance of

that duty the defendant company was bound to exercise
the greatest degree of care; but it was not bound to receive
passengers away from the usual place set apart for that
purpose on that particular class of cars or in the midst of
its yards used for making up trains, nor is a person who
goes and climbs upon a freight train in the midst of such
yard, without notice to the company, at a place where the
defendant company was not accustomed to receive passen-
gers, in any sense a passenger. This train was not at the
freight depot where the plaintiff proved the company
received passengers. On the contrary, the plaintiff's
evidence shows that there were three side tracks between
where the plaintiff was found lying after the injury and
the freight depot. I do not think that giving the fullest
effect to all the evidence on the part of the plaintiff, and
conceding every fact and inference that might or could be
properly drawn from the evidence, it establishes or tends
to establish that the relation of passenger and carrier was
created between the plaintiff and the defendant. The
plaintiff had not in any way made known to the defendant
his wish to become a passenger on that or any train; he
had paid no fare; he did not go to the place where the
company was accustomed to receive passengers, but climbed
upon one of its freight cars in the midst of the yard. The
company, having no knowledge of his presence, moved its
train in such a way that he was injured; but how can it be
said that it was guilty of negligence? Under these circum-
stances I fail to see that it owed him any duty, and, being
ignorant of his presence, it could not take the precautions
to protect him from injury which it would otherwise have
been its duty to do. But this is not all. The plaintiff did
not use due care when he went into the defendant's car
yard at the hour of ten o'clock at night or later, and, with-
out the knowledge of any of the employés of the defendant,
undertook to board one of its freight cars for the purpose
of going upon a journey. And it must not be overlooked
that where the plaintiff undertook to board the train was
not at the freight depot where the defendant was accus-

tomed to receive passengers in the caboose of the freight train, but in the midst of the yard, with three side tracks between the depot and the place where the injury occurred. Such a course of conduct by the plaintiff was dangerous. The plaintiff thus put himself in a place of peril which it was his duty to avoid; and if, by reason of such conduct, he was injured, the law will preclude a recovery on the ground of contributory negligence. The law will not permit an individual to voluntarily and knowingly place himself in a place of danger or to be guilty of conduct which is dangerous in itself and which causes an injury, and then permit such party to throw the responsibility for such injury upon another, although such other may not have been without fault.

These considerations necessarily lead to a reversal of the judgment, and render it necessary to remand the cause with directions to the court below to allow the defendant's motion for a non-suit.