[No. 20695.   Department Two. — December 23, 1890.]

# THE PEOPLE, RESPONDENT, *v.* PERCY DOUGLASS, APPELLANT.

87   281
135   62

CRIMINAL LAW — ASSAULT WITH DEADLY WEAPON — PRIOR CONVICTION OF FELONY — PLEADING — READING OF INFORMATION — CONSTRUCTION OF MINUTES OF TRIAL. — A statement in the minutes of the trial of a defendant accused of an assault with a deadly weapon and of a prior conviction of a felony, who had pleaded not guilty to the former charge and guilty to the latter, that "the information is read and the plea of not guilty stated to the jury by the clerk," should be construed as a statement that the charge in the information as to the assault only was read, where it does not clearly appear that the whole information was read, and it appearing, from the record, that what was read was in the presence of the defendant, and not objected to, and that the charge as to the assault only was submitted to and passed on by the jury.

ID. — FORM OF VERDICT — GENERAL STATEMENT OF OFFENSE. — A verdict in general terms finding the defendant guilty of an assault with a deadly weapon, under an information charging that the assault was made upon a person named, is in accordance with law, and free from uncertainty.

ID. — FORM OF JUDGMENT — GENERAL RECITAL OF CONVICTION. — The judgment is not rendered insufficient or uncertain by merely reciting that the defendant answered and confessed to a previous conviction of manslaughter, and was convicted in the court of the crime of assault with a deadly weapon, without further statement of particulars.

ID. — MISNOMER OF PERSON ASSAULTED. — Whether in the information the name of the person assaulted was written therein "Daniel Auseon" or "Daniel Anseon," was for the trial court to determine, and the trial court having directed the jury that the name written in the information was Daniel Auseon, this court will not revise the action of such court in so holding.

ID. — ASSAULT UPON BRAKEMAN OF RAILROAD TRAIN — TRESPASS — QUESTION OF FACT. — Where the assault was committed upon the brakeman of a railroad company in his efforts to get the defendant off the train, and there is evidence tending to show that the defendant was not a passenger on the train, but a trespasser thereon, it is a question of fact for the jury whether the defendant was a trespasser or a passenger.

ID. — PRESUMPTION — PASSENGER — TRESPASSER UPON TRAIN. — A person on a car used for carrying passengers is presumed to be a passenger, and rightfully there, but this presumption may be rebutted; and no presumption of law or fact arises where the person is found on a car not used for the accommodation of passengers, and it is for the jury to determine whether such person is a passenger or trespasser upon the train.

ID. — JUSTIFICATION OF ASSAULT. — A trespasser on a train is not justified in shooting a servant of the railroad company who attempts to put him off, when he can with safety get off and avoid the shooting.

Id. — Punishment of Offense— Previous Conviction of Manslaughter.
— An assault with a deadly weapon being punishable upon a first con-
viction by imprisonment in the state prison for a period of two years, it
may be punished under section 266 of the Penal Code by imprisonment
therein for any term not exceeding ten years, where there has been a
prior conviction of manslaughter.

Appeal from a judgment of the Superior Court of
Fresno County, and from an order denying a new trial.

The verdict of the jury found the defendant guilty of
an assault with a deadly weapon. The judgment con-
tained the recital that the " said Percy Douglass, hav-
ing answered and confessed to a previous conviction of
manslaughter, and having. been convicted, in this court,
of the crime of assault with a deadly weapon, it is there-
fore ordered, adjudged, and decreed that the said Percy
Douglass be punished by imprisonment in the state
prison of the state of California, at Folsom, for the term ·
of eight (8) years," etc. Further facts are stated in the
opinion of the court.

*J. W. Ahern*, and *P. Reddy*, for Appellant.

*W. E. Tupper*, *H. H. Welsh*, and *S. J. Hinds*, for Re-
spondent.

Thornton, J. — The defendant was convicted of the
crime of assault with a deadly weapon. This appeal is
by him from the judgment, and an order denying his
motion for a new trial.

Several points are presented and argued on behalf of
appellant, which we will proceed to consider.

The defendant was accused, by the information, of as-
sault with a deadly weapon, and of a prior conviction of
a felony, viz., manslaughter. On his arraignment he
pleaded *guilty* to the prior conviction of manslaughter,
and *not guilty* as to the charge of assault with a deadly
weapon. When the jury had been impaneled and sworn,
it is stated, in the minutes of the trial, that " the infor-

mation is read and the plea of not guilty stated to the
jury by the clerk."

It is urged on behalf of defendant that it was error to
read the information to the jury. The counsel for de-
fendant construes the statement above quoted as a state-
ment that the whole information was read, including both
charges made in it, to one of which, as above stated, de-
fendant had pleaded guilty. We do not so construe the
statement taken from the minutes of the trial. We un-
derstand it as a statement that the charge in the infor-
mation as to the assault only was read. It would be
entirely unnecessary to read that portion of it in which
the prior conviction, to which he had pleaded guilty, was
set forth. At any rate, it does not clearly appear that
the whole information was read. If it was read, it was
done in the presence of defendant and his counsel, and
no objection was made to it. Further, the record shows
distinctly that the charge as to the assault *only* was sub-
mitted to and passed on by the jury.

The verdict is in accordance with law (Pen. Code, sec.
1151), and is free from uncertainty. (See *People* v. *Mc-
Carty*, 48 Cal. 559.) The same is true of the judgment.
(See *In the Matter of Ring*, 28 Cal. 248.) The judg-
ment as entered states the crime of which the defendant
had been convicted, and the sentence of the court. This
is all that is required by law. There is no uncertainty
in these statements.

It is argued that there is a fatal variance between the
information and the proof, inasmuch as the information
sets forth that the assault was made on Daniel Anseon,
and the proof is, that it was made on Daniel Auseon.

The court, in its charge, told the jury that the de-
fendant is accused of the crime of an assault on Daniel
Auseon. The only accusation in this case is that set
forth in the information. The direction of the court to
the jury is as to what is contained in the information.
Whether the question as to what is contained in the

information is one of law or fact, it is to be determined by the court below, and when the court below has determined it, unless it clearly appears to be error, this court will not disturb it. Many persons, in writing the letter "u," sometimes form it very like the letter "n," and *e converso*, so that one letter is frequently mistaken for the other. We have no doubt such is the case here; that in giving shape to "u," it was formed in such a manner as to resemble the letter "n." The only evidence that we have that "n" was the letter, instead of "u," is that of the clerk who copies it to be printed in the record as "n." But the court below differed from the clerk as to this, and between the two, it is the duty of this court to follow the judgment of the court below. The foregoing considerations induce us to conclude that it is not clear that the court below fell into an error in this matter, but, on the contrary, that the court below read the information aright, and that in this regard there is no error in the record.

We have considered the points in regard to the directions given by the court below, and the refusal, by the court, of the requests to direct the jury, made by defendant, and find no error in them.

There is no presumption of law or fact that a person found anywhere on the passenger train of a railway is a passenger. Such a presumption is opposed to all principle. If a person is found in or on a passenger-car on a train for carrying passengers, such a fact will justify the conclusion *prima facie* that he is a passenger; but if seen to go on the platform of a mail-car, or of some other car not run for the accommodation or use of passengers, no such conclusion as that he was a passenger could be legitimately drawn. The rule seems to be laid down with a significant limitation in *Louisville etc. R'y Co.* v. *Thompson,* 9 N. E. Rep. 357, cited and relied on by defendant. The rule as there stated is, that "a person on a train used for carrying passengers is, in the absence of

countervailing circumstances, presumed to be a passenger, and rightfully there." By the language here used, *the presumption* is allowable, "*in the absence of countervailing circumstances*," which is equivalent to saying that the presumption, admitting it to exist, belongs to the class of disputable presumptions, and may be rebutted. The rebutting evidence is spoken of, in the opinion, as countervailing circumstances, which are nothing more than rebutting circumstances. The circumstances which rebut the presumption that defendant was a passenger are abundant. Evidence was introduced which tended to show that the defendant was not a passenger on the train. A witness testified that he was a brakeman on the night passenger train No. 18 on the morning of the 20th of April, 1889, when the shooting occurred of which defendant is accused. On the morning of that day, before daylight, when it was dark, the train being stopped at Madera, in Fresno County, the witness saw two men (one of whom was defendant) coming up from the rear end of the depot to where he stood. These men crossed the platform of a sleeper, and went up on the opposite side of the train from the depot. They went up toward the engine. He saw them attempt to get on the train, behind the mail-car, between the mail-car and the express-car, and he hallooed to them not to get on, to keep off, but they paid no attention to his hallooing. Witness went to where they were, the defendant standing on the platform of the mail-car, and the other on the platform of the express-car. He drove one off the train; the other (defendant) refused to go, and in the effort to get him off, the witness was shot by the defendant. The platforms of the cars on which the two men got were several cars distant from the regular passenger-car, and two cars from the nearest sleeper. These men did not go to the passenger-car at all, nor did they speak to any one connected with the management of the train, to procure a passage or pay fare, and when the witness (brakeman)

ordered them off the train, they did not say, or pretend in any way or manner, that they were passengers on the train. Evidence of these circumstances was before the jury. The court, in its instructions, left it to the jury to find whether they were passengers or intruders or trespassers on the train. The objection on behalf of the defendant is, that there was no evidence on which this question could be left to the jury. In this, the learned counsel for defendant is mistaken. The evidence is detailed above, and in our view was sufficient, and the court committed no error in submitting the point to the jury whether the defendant was a trespasser or a passenger on the train.

Another point made is, that the court erred in telling the jury that the defendant, a trespasser on the train, was not justified in using his pistol and shooting, if the train was running at a rate of speed when he (the defendant) could with safety get off of it or descend from it. We cannot concur in this view. If wrongly on the train, no law would justify him in shooting, when he could with safety get off it and avoid the shooting. It was his duty to get off when told to do so. If he did not, he could not urge it as a defense rendering the shooting justifiable, if he could have gotten away from the train with safety to himself. This is too plain to require argument to establish it. The statement of the proposition is a refutation of it.

We are of opinion that the court fairly put the case to the jury in its directions, and refused no request which it was not proper in law to refuse.

The point as to the term of punishment is not well taken. By the provisions of subdivision 2, section 266, of the Penal Code, if the subsequent offense of which a person is convicted is such that upon a first conviction he could be punishable by imprisonment in the state prison for any term less than five years, then on such subsequent conviction he can be punished by imprison-

ment in the state prison not exceeding ten years.  Here defendant, if he had been first convicted for the offense for which he was subsequently convicted, could have been punished by imprisonment in the state prison for two years; i. e., a term less than five years.  For the subsequent conviction, then, he could have been sentenced to the state prison for a term *not exceeding ten years.*  The sentence was for eight years, two years short of the time for which he could have been sentenced.

After an examination of all the points made and discussed, we are of opinion that there is no error disclosed by the record, and that the judgment and order should be and are affirmed.

McFARLAND, J., and SHARPSTEIN, J., concurred.

Hearing in Bank denied.