James J. Fitzgibbon v. Chicago & Northwestern Railway Company, Appellant.

**Who is a Passenger:** PRESUMPTIONS. One who boarded a train knowing that it was run for a particular class of excursionists and that it did not stop at regular stations, and which was not left at a place where an invitation to all persons to take passage therein could be implied, will not be presumed to have been a passenger thereon.

SAME: *Evidence.* Evidence that plaintiff on inquiring and learning of a conductor of a train, intended for a particular class of excursionists only, when it stopped, said that it would do for him; that he boarded it in the conductor's presence; that he intended to pay his fare, and had the money therefor; and that others not excursionists had been allowed to board the train sufficiently tend to show that plaintiff was accepted as a passenger to justify the submission of that question to the jury.

ACCEPTANCE BY CONDUCTOR. The acceptance, as a passenger, by the conductor of a special excursion train, of one not belonging to the excursion, is binding on the company and he will be treated as a passenger, if he did not know that the conductor exceeded his authority.

**Negligence:** CARRIERS: *Plea and proof.* On a petition alleging nothing but an injury to a passenger because of a carrier's negligence, it is error to submit to the jury the question of plaintiff's right to recover, as a trespasser, for gross negligence.

*Appeal from Monona District Court.*—HON. GEORGE W.
WAKEFIELD, Judge.

THURSDAY, MAY 25, 1899.

ACTION at law to recover damages for injuries sustained by plaintiff in a collision between trains on defendant's line of road. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Hubbard & Dawley* for appellant.

*M. F. Harrington* and *Frank Tamisea* for appellee.

DEEMER, J.—In his petition plaintiff alleges that on the eleventh day of July, 1896, he was a passenger upon one of defendant's trains from Logan to Loveland; that after the train started from Logan, through the carelessness and negligence of defendant, it collided with another train owned and operated by the defendant, which was coming from an opposite direction, by reason of which the plaintiff received the injuries of which he complains. All the allegations of the petition were put in issue by a general denial interposed by the defendant. It appears from the evidence that an organization in the city of Omaha, Neb., known as the "Union Pioneer Employes Association," contracted for a train of cars to carry the members of the association and their families from Omaha, by way of Council Bluffs, to Logan, Iowa, and return, on a picnic excursion, the association to pay a stipulated price for the use of the train. The train was made up at Omaha of fifteen or sixteen Union Pacific passenger cars and one baggage car, and, with the excursionists on board, was drawn by a Union Pacific engine to the transfer in Council Bluffs, where the train was taken in charge by a crew of defendant's employes, and drawn to Logan by one of the defendant's engines. In pursuance of the contract, tickets were issued to the association for each car, and

no fares were collected, it being left to the association to see that only members and their families were carried on the train. As the train was not a regular one, and did not run on schedule time, no tickets were sold for passage thereon. On arriving at Logan, the excursionists proceeded to a park in the town to hold their picnic, and the train was placed upon a side track about a quarter of a mile west of the defendant's station house, where it remained during the day. The presence of the picnic party was notorious. The number in attendance was large, and the train was readily recognized as an excursion train by the number of cars, the decorations on the engine, and the place where it was left during the picnic. In the evening the excursionists came back to the train, with a view of starting for home, and, after they had boarded, it was started west from where it had stood during the day. The conductor and engineer both overlooked the fact that a freight train, running on schedule time, was about due from the west, and they negligently started west with their train, which, after proceeding a short distance, collided with a freight train, which was running at a high rate of speed, causing a number of deaths, and injuring a number of persons, among whom was the plaintiff.

No question is made but that the conductor and engineer of this special or excursion train were negligent in not waiting until the freight train had passed, and that their negligence caused the wreck and its consequences. It is not disputed that plaintiff was on the excursion train at the time of the collision, and that he received the injuries complained of in consequence thereof. It is claimed, however, that plaintiff was not a passenger on this train; that he was a mere trespasser, to whom defendant owed no duty except that of not willfully injuring him; and that it is not responsible in damages for the injuries he received. The trial court instructed the jury, in effect, that plaintiff, although not a passenger, might recover, if the defendant was guilty of gross negligence in running its

train. This instruction is complained of because not justified by the issues and not supported by the evidence.

It will be observed that plaintiff alleged in his petition that he was a passenger, and that he was injured through the carelessness and negligence of the defendant. This, then, is the duty which he charges the defendant owed him. And his recovery, if recovery be had, must be based upon a breach of this duty. *Humpton v. Unterkircher*, 97 Iowa, 509. In that case it is said: "It is essential, in any suit for negligence, that a particular duty neglected be declared upon. The recovery cannot be had for one breach on a petition counting upon another." In the case of *Way v. Railroad Co.*, 73 Iowa, 463, plaintiff sought to recover, as a passenger, for negligence in making a coupling, and, on appeal to this court, it was held that he was not a passenger. The case being remanded, plaintiff filed an amendment to his petition, retaining the allegations of the original petition, and, in addition, alleging that the injury was caused by the gross negligence of the employes in charge of the train. On the second appeal it was contended that there could be no recovery without proof that plaintiff was a passenger. Answering that contention, we said: "But we think this position is not maintainable; for, while the defendant would have been liable if his intestate had been a passenger and the injury had been occasioned by but slight negligence on its part, it would also, under the statute (Code 1873, section 1307), be liable even though that relation did not exist, if the injury was caused by the gross negligence or mismanagement of the employes in charge of the train. So that the allegation that he was a passenger was redundant, if plaintiff relied upon the averment of gross negligence, as also was that averment if he relied upon the allegation that intestate was a passenger. The petition alleged two states of fact, upon either of which defendant would be liable; and some of its averments, while material to one of these, are redundant as to the other, and plaintiff was entitled to recover if he had

established either of them, even though he had failed to prove the allegations which as to it were redundant. Possibly he could have been required, upon proper motion, to strike one of the averments or to plead the two states of fact, in separate counts. But no such motion was made. Very clearly, we think his right of recovery was not defeated alone by the failure to prove the allegation that the intestate was a passenger at the time of the injury." From this case it clearly appears that there is a marked distinction between an action by a passenger, who may recover for slight negligence, and an action by a trespasser, who may only recover for gross negligence, and that the mere charge of negligence does not carry with it a charge of gross negligence. Plaintiff's petition not only charges that he was a passenger, and that defendant owed him the duty which that relation imposes, but it simply counts on negligence, and, of course, that degree of negligence which the particular duty imposes. It is not even inferentially charged that the defendant was guilty of gross negligence, and it is apparent that the court erred in submitting to the jury the question of plaintiff's right to recover as a trespasser. As there was no charge of gross negligence, we cannot say, as we did in the *Way Case,* that the allegation that plaintiff was a passenger may be treated as redundnt. Defendant was not called upon to meet the issue of gross negligence, and therefore the court erred in giving the instruction complained of.

II. The court further instructed that the presumption was that plaintiff was a passenger upon the train at the time he was injured. That rule is no doubt correct when applied to a case where the injured party is found upon a regular passenger train, or upon a train carrying passengers in general, but, as applied to the undisputed facts in this case, it was erroneous. A "passenger," in the legal sense of the term, is one who travels in some public conveyance, by virtue of a contract, express or implied, with

the carrier, as to the payment of fare, or that which is accepted as an equivalent therefor. *Railroad Co. v. Price,* 96 Pa. St. 267. As a general rule, every one on a passenger train of a railroad company, and there for the purpose of carriage, with the consent, express or implied, of the company, is presumptively a passenger. *Railroad Co. v. Thompson,* 107 Ind. 442 (8 N. E. Rep. 18, and 9 N. E. Rep. 357). But there must be some form of acceptance by the company of the person as a passenger. This acceptance need not be direct or express, but may be, and generally is, implied from circumstances. And if the train be a regular passenger train, or a train carrying passengers in general, or a special train fitted for the carriage of persons in general, and a person boards such train without notice that it is reserved for particular persons, no doubt the presumption will arise that he was a passenger. But railroad companies have the right to run trains which do not carry passengers, or to run trains for a particular person, or for a particular class of persons, and, if one boards such a train with notice of its character, he is not presumptively a passenger. Whether he should be treated as a passenger or not depends upon the circumstances of each particular case. See *Wagner v. Railroad Co.,* 97 Mo. 512 (10 S. W. Rep. 486); *Railroad Co. v. Headland,* 18 Colo. Sup. 477 (33 Pac. Rep. 185); *Eaton v. Railroad Co.,* 57 N. Y. 382; *Railroad Co. v. Black,* 87 Tex. Sup. 160 (27 S. W. Rep. 118). If the train is not designed for the use of passengers in general, there is no implied acceptance of one who enters upon it without right, as a passenger. But if it be fitted up for the carriage of passengers, and is placed in such a position that persons may be induced to enter upon it as passengers, then it must be shown that these persons had notice or knowledge that it is not intended for their use. *People v. Douglass,* 87 Cal. 281 (25 Pac. Rep. 417); *Railroad Co. v. Singleton,* 66 Ga. 252; *Rosenbaum v. Railroad Co.,* 38 Minn. 173 (36 N. W. Rep. 477); *Keating v. Railroad Co.,* 97 Mich. 154 (56 N.

W. Rep. 346); *Wagner v. Railroad Co., supra; Haase v. Navigation Co.*, 19 Or. 354 (24 Pac. Rep. 238). In the case before us, the evidence shows, without dispute, that the train was chartered and run at a fixed price per car for the exclusive use of the Pioneer Association and their families, and was not for the traveling public. The train was for the exclusive use of the excursionists, and no tickets were sold to the general public for use on this train. While it may be true that plaintiff had no knowledge of the terms of the contract under which the train was chartered, and it may be he did not know that tickets were not sold for that train, yet he did know, or must have known, that it was a special train, run for a particular class of persons; that it did not stop at the regular stations; and that it was not left in such a place as that an invitation was impliedly extended to all persons to take passage thereon. There is no presumption, therefore, that he was a passenger upon this train. His recovery must be on the theory that he was a passenger, notwithstanding the train was a special one. In other words, it must be shown that some agent or employe of the company, having authority, accepted him as a passenger, and permitted him to ride upon the train. The instruction that he was presumptively a passenger was therefore erroneous.

III. It is argued that there is no evidence in the record tending to show that the plaintiff was accepted as a passenger, and that the court erred in refusing to direct a verdict for defendant, and in refusing to give certain instructions asked by it to the effect that plaintiff was not a passenger, and therefore could not recover. The evidence adduced to sustain the proposition that the defendant accepted plaintiff as a passenger is as follows: Plaintiff testified that, desiring to go to Missouri Valley upon the excursion train, he went to the ticket office to get a ticket; that the agent was busy talking with some person in the baggage room, and, being admonished that there was not

much time, he started to the train without asking for a ticket. He says: "As I went down to the train, I met the conductor of the excursion train. His name was Reed. I had known him to be a conductor in the service of the Chicago & Northwestern Company for two or three years. As I started down to the train, I met the conductor just about the end of the far end of the platform, and I asked him if he was going to stop in Missouri Valley, and he said he didn't know,—didn't have his orders yet. I asked him when he would start. He said, 'just as quick as he could get his orders;' and I started to the train then. After that, and before I entered the train, I saw the conductor again up near the front end of the train, near the engine, and had a conversation with him there. I was standing about the front end of the baggage car, close to it. I then again asked him if he was going to stop in Missouri Valley, and he said, 'No; he was going to stop at Loveland, and meet No. 7.' I said that would do me, and I would come back to Missouri Valley on No. 7, and I got right on the train then. The conductor was standing right there by me. There was no crowd to attract his attention. There was two or three, or a few, standing around. at that time. It was shortly before the train started. I boarded that train in the presence of the conductor." He further said: "I could not tell a Union Pacific Pioneer excursionist from any other stranger. I was not one myself." He also said: "I intended to pay my fare on the train in which I was at the time of the collision, and had the money with which to pay it." Another witness testifies: "I saw the conductor, and heard him have a conversation with the plaintiff, right close to the engine, just after he handed his orders to the engineer. He handed him something. I couldn't say it was orders. Plaintiff asked him if he was going to stop at the Valley, and he said, 'No, they would pass No. 7 or some other train.' They was going to wait for some train. Jim said that would do him all right; that he would come back on No. 7. Then

Jim got on the train. The conductor was there at the time. The conductor just hesitated, and answered the plaintiff, and then just started off as soon as he was through with the conversation. I believe he was saying something, and didn't wait to finish it before he started off. I suppose he was busy." It also appears that a number of persons got on the train at Council Bluffs, and rode to Logan, some of whom were members of the association and their families residing in that city, and others were persons joining friends among the excursionists. A few persons got on at Missouri Valley, and were carried to Logan, and a number of persons, who had come from Missouri Valley by regular train, boarded the excursion train to return to Missouri Valley, and were injured in the collision.

We think this evidence, in connection with some other circumstances disclosed, justified the court in submitting the question as to plaintiff's being a passenger, by reason of his acceptance as such by the conductor, to the jury. Even if the train was not made up for the carriage of passengers in general, the defendant, through its conductor, had the right to accept such passengers; and, if the conductor did accept the plaintiff as such passenger, he will be treated as such, in the absence of notice of knowledge on his part of any limitations upon the conductor's authority. See *Railroad Co. v. Wheeler,* 35 Kan. Sup. 185 (10 Pac. Rep. 461); *Railroad Co. v. Yarbrough,* 83 Ala. 238 (3 South. Rep. 477); *Wilton v. Railroad Co.,* 107 Mass. 108; *Sherman v. Railroad Co.,* 72 Mo. 62; *Everett v. Railway Co.,* 9 Utah, 340 (34 Pac. Rep. 289); *Railroad Co. v. Muhling,* 30 Ill. 9; *Railroad Co. v. Frazer,* 55 Kan. 582 (40 Pac. Rep. 923); *Dunn v. Railway Co.,* 58 Me. 187; *Creed v. Railway Co.,* 86 Pa. St. 139. For the errors above pointed out, the judgment of the district court is REVERSED.

GRANGER, J., absent, and taking no part.

WATERMAN, J. (dissenting.—I do not agree with the majority in what is said in the second division of the foregoing opinion. It seems to be assumed that the instruction treated of was given as a conclusion based upon all the evidence in the case; but this is not correct. The instruction, in its material part, is as follows: "One riding on a railroad car is presumed, *prima facie*, to be there lawfully, having paid, or being liable when called on to pay, his fare; and where one enters a railroad car in good faith, for the purpose of taking passage thereon, in a train carrying passengers, intending to pay his fare when called upon, he becomes a passenger, though no fare has in fact been paid." Following this, and in the same paragraph of the charge, it was left to the jury to say, under proper directions, whether this presumption was rebutted or overcome by the facts disclosed in evidence, as to the character of this train, so far as known to Fitzgibbon, and the circumstances under which he took passage. The instruction is sustained by authority. Fetter Carriers of Passengers, 1195; *Creed v. Railway Co.,* 86 Pa. St. 139; *Railway Co. v. Books,* 57 Pa. St. 339; *Dewire v. Railway Co.,* 148 Mass. 343 (19 N. E. Rep. 523); *Whitehead v. Railway Co.,* 99 Mo. Sup. 263; 6 L. R. A. 409 (11 S. W. Rep. 751). The case will have to be reversed for the error in submitting to the jury the issue of gross negligence, but in all other respects I think the action of the trial court was correct.

ROBINSON, C. J., concurs in this dissent.