Argued October 16, affirmed November 24, 1914, rehearing denied
February 2, 1915.

# CLARK v. NORTH PAC. S. S. CO.

(144 Pac. 472.)

**Pleading—Conclusions of Law—Demurrer—Failure to Demur.**

1. In an action for loss of baggage, an averment in the complaint
that plaintiff became a passenger on defendant's boat, and defendant,
as a consideration of plaintiff's becoming a passenger, agreed to trans-
port her baggage, etc., when not attacked by demurrer, cannot, after
findings for plaintiff, be questioned on the ground that it was a mere
conclusion of law.

**Appeal and Error—Questions of Fact—Findings.**

2. Findings in an action tried by the court are equivalent to a
verdict, and must be supported, if there is any evidence to justify
them.

**Carriers—Carriage of Passengers—Relation—"Passenger."**

3. Where a person desiring transportation entrusts himself to the
custody of the carrier, and the carrier accepts him, the relationship
of carrier and passenger is immediately established, regardless of the
manner in which the passenger offered himself.

[As to who are passengers and when they become such, see note
in 61 Am. St. Rep. 75.]

**Carriers—Carriage of Passengers—Payment of Fare—Passenger.**

4. The payment of fare in itself is not an absolute essential to
the creation of a relation of passenger and carrier, and where such
relation is established by an offer and acceptance for transportation,
obligating the passenger to pay the customary fare and the carrier
to safely transport the passenger and his baggage, the relation of pas-
senger and carrier exists before payment of any fare.

**Carriers—Carriage of Passengers—Rescission of Contract.**

5. Where one who offers himself for carriage and is accepted by
the carrier declines to pay his fare, the carrier, if desirous of termin-
ating the relationship of carrier and passenger so created, must re-
scind the contract by removing him from his train, or, in case the
carriage is on water, by setting the passenger ashore.

[As to when a passenger ceases to be such, see note in 37 Am.
Rep. 384.]

**Shipping—Carriage of Passengers—Baggage—Actions—Evidence—
Sufficiency.**

6. In an action for injuries to baggage, evidence *held* to sustain a
finding that the defendant accepted plaintiff as a passenger on its
boat, and undertook to bring on board her trunk, which was dropped
into the water and the contents injured.

From Multnomah: HENRY E. McGINN, Judge.

Department 1.   Statement by MR. JUSTICE BUR-
NETT.

This is an action by I. L. Clark against the North
Pacific S. S. Co.

After alleging the corporate character of the de-
fendant, the complaint states:

"That on or about the 10th day of October, 1911,
plaintiff became a passenger on the defendant's
steamer 'Roanoke' from San Pedro, California, to
San Diego, California, and as a passenger thereof
delivered to defendant's steamer at San Pedro, in
good and proper condition, her baggage, consitisng of
a trunk, containing wearing apparel, etc., of the. rea-
sonable market value of $500; that as a consideration
of plaintiff becoming a passenger on said steamer, and
paying the usual and customary fare, the defendant
agreed and promised to carry without delay and safely
said baggage, and to deliver the same in good condi-
tion to plaintiff at San Diego, California."

The complaint concludes with an allegation that
afterward the defendant delivered the trunk to plain-
tiff in a damaged condition, to her loss in a sum men-
tioned, which injury was caused by the negligence of
the defendant, its agents, servants and employees.
The defendant admits its corporate character and its
function as a common carrier of freight and passen-
gers for hire to and from ports in the states of Cali-
fornia and Oregon, but otherwise denies the entire
complaint.   Further defending, the answer states sub-
stantially that at the time mentioned the plaintiff un-
dertook to deliver to the defendant a trunk, the con-
tents of which were not known to the defendant; that
on the day its ship sailed from San Pedro, California,
the plaintiff attempted to board the steamer and con-
vey upon it her trunk, but that she carelessly and
negligently failed to arrive at the vessel until its gang-

plank had been withdrawn and it had swung away from its dock; and that in order to get her baggage aboard the plaintiff carelessly and negligently, through her agents and employees called for a rope from the steamer, and, having attached it to the trunk, directed it to be hauled aboard, and that by reason of the careless way in which the rope was tied it became detached and the trunk fell into the water. It is further stated that the act of the plaintiff described was against the wishes and objections of the defendant, and that it was a custom of the defendant, well known to the plaintiff, to keep an employee at the steamship previous to the date of sailing for the purpose of checking baggage of passengers, but that she failed and neglected to check her trunk or to buy a ticket to her destination. Except that defendant is a common carrier owning the steamer in question, and that she became a passenger thereon, the plaintiff denies all the allegations of the answer. The court, as a result of a trial without a jury, made findings of fact and conclusions of law in favor of the plaintiff. From the resulting judgment the defendant appeals.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Reed & Bell,* with an oral argument by *Mr. Sanderson Reed.*

For respondent there was a brief and an oral argument by *Mr. J. C. Simmons.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The principal contention of the defendant is that the allegation of the complaint, to the effect that the

plaintiff became a passenger on the defendant's steamer "Roanoke," is a statement of a conclusion of law, and not sufficient in that respect to support a cause of action. The only precedent cited in support of the proposition is *Fremont etc. Ry.* v. *Hagblad,* 72 Neb. 773 (101 N. W. 1033, 106 N. W. 1041, 9 Ann. Cas. 1096, 4 L. R. A. (N. S.) 254). This was an action for personal injuries to an individual, who stated that he had purchased a ticket entitling him to safe transportation on the defendant's train between certain points, and that he received the injuries while a passenger on the defendant's premises. The complaint was challenged, not only by demurrer, but by every other method, to the end of the case. Under these circumstances the court of last resort held that the allegation stated a mere conclusion of law. In the instant case, however, no objection appears to have been taken to the complaint by demurrer or motion, or by objection on that point at the trial. Conceding that the allegation of the relation of passenger and carrier is essential to the relief sought in this case, we still must hold that, in the absence of objection by demurrer, the complaint must be held good after the findings are made; they being equivalent to a verdict: *Davis* v. *Wait,* 12 Or. 425 (8 Pac. 356); *Drake* v. *Sworts,* 24 Or. 198 (33 Pac. 563); *Baker City* v. *Murphy,* 30 Or. 405 (42 Pac. 133, 35 L. R. A. 88); *Fowler* v. *Phoenix Ins. Co.,* 35 Or. 559 (57 Pac. 421); *Currey* v. *Butcher,* 37 Or. 380 (61 Pac. 631); *McCall* v. *Porter,* 42 Or. 49 (70 Pac. 820, 71 Pac. 976); *Bade* v. *Hibberd,* 50 Or. 501 (93 Pac. 364); *Templeton* v. *Lloyd,* 59 Or. 52, 57 (115 Pac. 1068).

The action, however, is not for personal injury to the passenger. The essence of the complaint is a claim of damages for breach of the contract to carry

the baggage of the plaintiff from San Pedro to San Diego. The cause of action is not affected by the circumstance that the contract to carry baggage is co-operant with the relation of passenger and carrier. The gist of the complaint is found in the allegation:

"That as a consideration of plaintiff becoming a passenger on said steamer, and paying the usual and customary fare, the defendant agreed and promised to carry without delay and safely said baggage, and to deliver the same in good condition to plaintiff at San Diego, California."

Here is a complete statement of an executory contract, of which becoming a passenger is stated as one element of the consideration.

2-6. In view of the findings of the court, which in numerous cases not necessary to cite here we have heretofore considered as equivalent to the verdict of a jury, the controlling question presented is whether or not there is any evidence to justify such a verdict. The substance of the testimony is that the plaintiff arrived at San Pedro on the steamer "Rose City," en route to San Diego. Arriving at the former port, she found the "Roanoke" berthed at the same dock and due to sail in a few hours. Concluding that she could arrive at her destination much sooner by taking passage on the "Roanoke," she applied at the steamer office on the dock for the purpose of buying a ticket. She went there four times for that purpose during the day, but each time found the office closed. She states that she was informed by a man on the dock, who afterward proved to be the district freight and passenger agent of the defendant, that she could buy her ticket aboard the ship. She, however, applied again at the office, and found it open, but no one in attendance. She and a lady friend went again aboard

the "Rose City," lying adjacent to the "Roanoke," and while waiting there they heard the whistle of the latter vessel, indicating that she was about to sail.    In company with the captain of the "Rose City," the two ladies ran hastily down the dock to the "Roanoke" and found the gangplank drawn aboard, the bow lines cast off, and the bow of the steamer being warped out into the channel by a stern line made fast to the dock. Rushing up to the vessel, the two ladies were helped aboard by the steward of the "Roanoke."    About this time two other men, presumably the stevedores or other employees about the dock, came running forward with the plaintiff's trunk.    Her attention being directed to this, the plaintiff said she could not go without her trunk.    The men carrying it called to the crew aboard the "Roanoke" to heave a line ashore, and some of them did so.    Those on the dock attached the line to the trunk, when the crew began dragging it by pulling on the rope, and when it got off the dock the handle to which the line was attached broke, allowing the trunk to fall into the water.    A member of the crew went over the side on a rope and endeavored to attach a noose to the trunk; but, failing to do so, the steamer went on its voyage, leaving the trunk to drift under the dock.    Afterward the defendant regained possession of the trunk, forced the lock, took out the contents, consisting of ladies' wearing apparel, partially dried the articles, replaced them in the trunk, and forwarded it to the plaintiff at San Diego. Aboard the steamer, when the plaintiff saw that her trunk was lost in the water, she refused to pay her fare, and told the officer that he could put her ashore. This was declined, and the defendant carried the plaintiff to San Diego.    It is true that the first mate of the vessel testifies that, although a member of his crew

threw a line ashore to be attached to the trunk, yet he himself called out to let the trunk alone. This order, however, was not obeyed.

Are the findings of the Circuit Court proper conclusions to be drawn from the facts disclosed by the testimony as above stated? It is manifest that the plaintiff offered herself as a passenger and her trunk as baggage to accompany her. It is equally plain that the defendant accepted her offer and entered upon the performance of its contract, for it not only helped her aboard, but it threw out a line of the vessel's tackle for the purpose of taking aboard the baggage. Members of the crew hauled on the line for that purpose. All this indicates an acceptance of the offer of the plaintiff. . The subsequent conduct of the defendant in taking the trunk from the water, opening it, drying its contents, and subsequent transportation and delivery of the.same to the plaintiff at San Diego, is also evidence of having accepted the plaintiff's offer, with its attendant responsibility. It is urged that the plaintiff was late in arriving at the steamer; that she did not have her trunk checked according to the practice of the defendant. In the first place, it is not alleged in the answer that the defendant had anyone there at the time to check the baggage in pursuance of its custom. On the other hand, the plaintiff testifies, and she is not disputed on this point, that she applied at the office five times for the purpose of buying a ticket, but found no one there to represent the company. We cannot say as a matter of law that the formula described in the answer is the only one by which the relation of passenger and carrier can be assumed. It matters not in what manner persons desiring transportation may intrust themselves to the custody of a passenger carrier, if that actually occurs with the

knowledge and consent of the carrier.  If in good faith the intending passenger goes upon the vessel for the purpose of taking passage on the usual terms and conditions established by the carrier, and the latter accepts the passenger, the relationship is at once established.

In the argument much stress was laid on the fact that the plaintiff refused to pay her fare; but, as shown in *Simmons* v. *Oregon R. R. Co.*, 41 Or. 155 (69 Pac. 440, 1022), the payment of fare in itself is not an absolute *sine qua non* to the creation of the relation of passenger and carrier.  The circumstances show an offer and acceptance, raising the obligation on the part of the passenger to pay the customary fare, and on the part of the carrier to transport safely the plaintiff and her baggage.  The contract was entered into and became a rule of action involving the conduct of the parties.  The nonpayment of fare would have constituted good cause for the defendant to rescind the contract.  The manner in which the carrier may rescind such a contract is pointed out in *Peabody* v. *Oregon R. & N. Co.*, 21 Or. 124 (26 Pac. 1053, 12 L. R. A. 823), to the effect that unless the passenger produces a ticket authorizing his transportation, or pays his fare, the carrier may eject him from the train. That is the manner in which the carrier may rescind such a contract; but in this instance, although the plaintiff offered to annul the contract by asking to be put ashore, the defendant refused to abrogate it, and partly performed its contract, both as to the carriage of the plaintiff and as to the transportation of her baggage.  Even now the defendant does not allege any counterclaim for the fare, or for damage accruing to it for any breach of the contract by the plaintiff.

The precedents cited by the defendant are not applicable to the case in hand: *Haase* v. *Oregon R. & N. Co., 19* Or. 362 (24 Pac. 238), was an instance where the plaintiff undertook to board a freight train without the knowledge of the defendant at a place where it never received passengers and without having purchased a ticket. While he was thus surreptitiously undertaking to gain entrance into the freight train, it was moved, whereby he was thrown to the ground and injured in consequence thereof. There was no meeting of the minds of the parties essential to the formation of a contract. In *Grahn* v. *International etc. Ry. Co.,* 100 Tex. 27 (93 S. W. 104, 123 Am. St. Rep. 767, 5 L. R. A. (N. S.) 1025), the plaintiff was undertaking to defraud the company by paying a freight conductor part of the fare, contrary to the known rules of the company, and was injured by being compelled to jump from a moving freight train on which passengers were not carried. The plaintiff's fraud vitiated the alleged contract to carry him as a passenger. In *Fitzmaurice* v. *New York, N. H., & H. R. R. Co.,* 192 Mass. 159 (78 N. E. 418, 116 Am. St. Rep. 236, 7 Ann. Cas. 586, 6 L. R. A. (N. S.) 1147), the defendant habitually issued tickets good for 3 months, but only for students under 18 years of age. The plaintiff, knowing this rule, fraudulently represented herself to be under 18 years of age and a student, while in fact she was above that age and was an employee of a mercantile firm. In an action where she sought to recover damages received in a collision involving the train upon which she was riding, the court held that, owing to her fraud in obtaining her ticket, the relation of passenger and carrier did not exist between the parties. In *Harmon* v. *Jensen,* 176 Fed. 521 (100 C. C. A. 115, 20 Ann. Cas. 1224), the plaintiff, although not an employee of the

defendant, was riding on a train carrying a special excursion free for employees only and on a free ticket issued in the name of another person. The court held that, owing to the deceit practiced, the plaintiff was not entitled to the rights of a passenger. In *Andrews* v. *Yazoo R. R. Co.,* 86 Miss. 129 (38 South. 773), plaintiff went to a railway station more than an hour before train time, and knowingly contrary to the company's rules went into the agent's private room to write concerning his own affairs. Afterward, while thus in the private office, he had a quarrel with the agent about matters entirely disconnected with the company's business, as a result of which the agent assaulted and injured him. In an action against the company it was decided that the plaintiff had no rights as a passenger under the circumstances. In *Metcalf* v. *Yazoo etc. R. Co.,* 97 Miss. 455 (52 South. 355, 28 L. R. A. (N. S.) 311), the question turned upon a statute requiring the railway company to keep open its waiting room for the accommodation of passengers for an hour before the departure of a train. The plaintiff in possession of a regular mileage ticket, went to the station 15 minutes before train time, deposited his baggage, and, going out of the depot to see a merchant near by, fell into an unguarded hole left by the company and was killed. Under these circumstances it was decided that the plaintiff's intestate was entitled to the rights of a passenger by virtue of the statute. In *Condran* v. *Chicago etc. Ry. Co.,* 67 Fed. 522 (14 C. C. A. 506, 28 L. R. A. 749), the meat of the matter is thus stated:

"One riding on a train by fraud or stealth, without the payment of fare, takes upon himself all the risk of the ride, and if injured by an accident happening to

the train, not due to recklessness or willfulness on the part of the company, he cannot recover.''

In *Radley* v. *Columbia Ry. Co.*, 44 Or. 332 (75 Pac. 212, 12 Ann. Cas. 447), the plaintiff was injured by jumping from the engine, where he was riding without a ticket and without the consent or knowledge of the conductor of the train, although by the acquiescence of the engineer. This court held that he was not a passenger.

In all these cases it appears that either fraud or stealth was imputed to the alleged passenger, to the destruction of that relation. Nothing of that kind is involved in this case. The undisputed testimony is that the plaintiff openly and aboveboard, in the immediate presence of the officers of the vessel, presented herself with her baggage to be carried as a passenger, and was accepted on board the steamer for that purpose. The contract, thus based on offer and acceptance, was initiated, and the parties entered upon its performance. What happened afterward, although almost immediately, relates to the breach of the contract, and that is the essence of the plaintiff's complaint. The substance of the defense is a denial of the relationship upon which the plaintiff relies. The testimony amply sustains the findings of the court in favor of the plaintiff.

The judgment is affirmed.

                    AFFIRMED.    REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.