WHITEHEAD v. THE ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, *Appellant,*

1. Railroads: PASSENGER AND FREIGHT TRAINS. A railroad company may use separate trains for freight and for passengers, and may exclude freight from one and passengers from the other.

2. ———: PASSENGER ON FREIGHT TRAINS. If a railroad company assumes to carry passengers for hire upon its freight trains, it must exercise the same degree of care as is required in the operation of its regular passenger trains, the difference only being that the passenger submits himself to the inconvenience and danger necessarily attending that mode of conveyance,

| | |
|---|---|
| 99 | 263 |
| 108 | 185 |
| 99 | 263 |
| 51a | 443 |
| 51a | 498 |
| 53a | 468 |
| 99 | 263 |
| 116 | 92 |
| 99 | 263 |
| 124 | 249 |
| 124 | 299 |
| 99 | 263 |
| 159 | 150 |
| 159 | 151 |
| 84a | 508 |
| 99 | 263 |
| 165 | 621 |
| 99 | 263 |
| 93a | 7273 |
| 99 | 263 |
| 94a | 2296 |

3. ———: ———: PLEADING. When one is permitted to take a caboose in a freight train for the purpose of transportation, by the consent of the agents in charge of the train, he is presumed to be there of right, and in a petition to recover damages for an injury received, while so being transported, it is not necessary that he should set out the rules of the company and allege a compliance therewith. If there has been a known violation of the rules of the company by the plaintiff, that is a matter of defense, and must be asserted by the defendant.

4. ———: ———. If one is riding on a freight train with the consent of the agents in charge thereof, the company owes him a duty, though he is there against the rules of the company.

5. ———: TRESPASSER. A railroad company is liable for injuries inflicted on a trespasser for want of ordinary care after the perilous position of the party is discovered.

6. **Master and Servant.** A master is civilly liable for the negligence or wrongful act of his agent, when done in the course of the agent's employment, even though the master may have prohibited the agent from doing the act of which complaint is made.

7. ———: CONDUCTOR. Where a conductor has entire charge of a train, and, in its management, acted for and represented the defendant, it being a part of his duties to see that persons did not ride upon it either with or without the payment of fare, his act in allowing a person to ride upon the train, without the payment of fare, is within the scope of his employment.

8. **Negligence:** EVIDENCE. The evidence in this case examined and held to show evidence of even gross negligence on the part of defendant's servants.

9. **Railroads.** Even if a person knows he is on a train in violation of the company's rules, still, being there with the consent of the master of the train, the company owes him at least ordinary care, and for a breach of that duty, it is liable in damages.

*Appeal from Washington Circuit Court.*—HON. JOHN L. THOMAS, Judge.

AFFIRMED.

*T. J. Portis* and *Geo. H. Benton* for appellant.

(1) The petition fails to state facts sufficient to constitute a cause of action. *Whitehead v. Railroad,* 22

Mo. App. 60; *Snyder v. Railroad*, 60 Mo. 413; *Eaton v. Railroad*, 57 N. Y. 382; s. c., note of REDFIELD, J., 13 .Am. L. Reg. 665, 672. (2) The court erred in the instruction given to the jury on its own motion. *Railroad v. Bartram*, 10 Ohio St. 459; *Evans v. Railroad*, 56 Ala. 246; *Railroad v. Nuzenn*, 50 Ind. 141; *Railroad v. Applewhite*, 50 Ind. 540; *Cheney v. Railroad*, 11 Md. 121; *Railroad v. Proctor*, 1 Allen, 267; *Johnson v. Railroad*, 46 N. H. 213; *Flower v. Railroad*, 69 Pa. St. 210. (3) The court erred in refusing to instruct the jury as requested by defendant. Authorities, *supra*.

*Dinning & Byrns* for respondent.

The facts and circumstances of this case make defendant liable to plaintiff as a passenger. The boy was in the caboose with the consent and approval of the conductor in charge of the train. The conductor represented the company. *McGee v. Railroad*, 92 Mo. 218; *O'Donnell v. Railroad*, 9 P. F. Smith, 239; *Railroad v. Chenewith*, 2 P. F. Smith, 379; Wood on Railroads, p. 1083; *Baltimore City v. Klein*, 61 Md. 33; *Siegrist v. Arnot*, 86 Mo. 200; *Steamboat v. King*, 16 Howard, (U. S.) 474; *Dunn v. Railroad*, 58 Me. 187; 86 Penn., p. 144; 20 Minn., p. 125; *Walton v. Railroad*, 107 Mass. 108, and cases cited; *Ramsden v. Railroad*, 104 Mass. 117.

BLACK, J.—Plaintiff, by his guardian, brought this suit to recover damages for injuries, and recovered a judgment for five thousand dollars from which defendant appealed.

As objections are made to the petition itself, the sufficiency of the evidence to support the verdict, and to the giving and refusing to give instructions, it is necessary to deal somewhat in the details of the case. The petition states that plaintiff entered a caboose car attached to one of defendant's freight trains, in which

it carried passengers; that the defendant's agents permitted plaintiff to enter the car as a passenger; and then undertook to carry him from De Soto to Belmont. The circumstances of the accident are then set out, coupled with the various allegations of negligence on the part of defendant, which circumstances will appear from the following statement of facts as disclosed by the evidence.

Frey was a brakeman on the train in question, and boarded with the plaintiff's mother at De Soto. The plaintiff, a lad fourteen years of age, desired to go over the road with Frey, and the plaintiff's mother gave her consent, provided the conductor would permit him to go. Frey and the boy got on the freight train at De Soto at about seven o'clock in the afternoon, at which time the train left. It does not appear what was said to or by the conductor, but it does appear that the boy remained in the caboose without objection. The boy's presence in the caboose, and his purpose to make the trip, without the payment of fare, was known to the conductor, and the only inference to be drawn is, that he gave his consent to the project.

At about two o'clock in the morning, and some fifty miles distant from De Soto, the train, which was composed of twenty-two loaded freight cars and the caboose, reached the top of a hill. As it passed over the hill, the caboose and four cars became detached, leaving the conductor, two brakemen and the boy in the caboose. The engineer did not discover the loss of a part of his train until he began to ascend another grade. To avoid a passenger train he went on to a station, five miles distant, and there got orders and returned with the engine to get the lost cars. In the meantime the caboose and four cars came to rest at the bottom of the grade, some two miles from the place where the train parted. The boy was then asleep in the caboose to the knowledge of the conductor, and two brakemen, but was not waked up by them.

Whilst the caboose was at rest, one brakeman went forward to signal the engine on its return. The other went about a quarter of a mile up the hill to flag another freight train which was known to be in the rear. It appears this rear freight train had met with a like accident at the top of the hill, and the forward part of the train, composed of some sixteen or eighteen cars, had but one brakeman on it, so that the train was not under the control of the engineer. He says he saw the signal when going down and around a curve, and that he resorted to all means at his command to bring his train to a halt, but could not stop it, and it ran into the caboose. In the collision the boy's arm and leg were broken; the leg had to be amputated; the boy was still asleep. The evidence fails to show what the conductor was doing, save that he was present at the time of the accident. Considering the grade, frost on the rails, and the short distance at which the signal was displayed, it is left in doubt whether the train could have been stopped in time to avoid a collision, had the accident to it not occurred.

The evidence shows that defendant carried passengers for hire on its local freight trains, but not on through freight trains. The train in question was a special through train. The rules of defendant forbade the carriage of passengers on this and like through trains. There is nothing in the outward appearance of the cars or caboose to indicate any difference between through and local freight trains, though the latter are designated on the time cards displayed at stations.

On this evidence, the court gave the following instruction:

"If you find, from the evidence, that plaintiff was riding on the caboose attached to a freight train of the defendant corporation, with the knowledge and consent of the agents and employes in charge of said train, and that these agents and employes knew of the peril to

which said Whitehead was exposed, and that he did not know it, and, by the exercise of ordinary care, could not have known it, that the agents and employes knew of his peril in time to have informed him of it, or in time to have removed him out of danger, and that they failed to do either, and that they were guilty of negligence in not informing him of his peril, or in not removing him out of danger, and, by reason of such negligence, on the part of said agents and employes, said Whitehead received the injuries complained of, then you will find the issues for him."

1. There can be no doubt but a railroad company, being a carrier of freight and of passengers, may use separate trains for freight and for passengers, and may exclude freight from one and passengers from the other. *Railroad v. Bartram*, 2 Ohio St. 459; *Dunn v. Railroad*, 58 Me. 187. If the company assumes to carry passengers for hire upon its freight trains, it must exercise the same degree of care as is required in the operation of its regular passenger trains, the difference only being that the passenger submits himself to the inconvenience and danger necessarily attending that mode of conveyance. *McGee v. Railroad*, 92 Mo. 208; *Wagner v. Railroad*, 97 Mo. 512.

This leads us to the specific objection made to the petition, which is, that, as it shows the plaintiff was injured whilst in the caboose attached to a freight train, it should contain a direct allegation that authority was given by the company to the agent, in charge of it, to carry passengers; for, without such permission from the company, it is insisted, the defendant owed no duty whatever to the plaintiff. There is no law which prohibits a railroad company from carrying, or persons from riding, in the caboose of a freight train. When one is permitted to take a caboose for the purpose of transportation, by the consent of those agents in charge of the train, he is presumed to be there of right. It is not

necessary that he should set out the rules of the company and allege a compliance therewith. If there has been a known violation of the rules of the company by the plaintiff, that is a matter of defense, and must be asserted by the company. Here it is not only stated that defend-ant's freight trains have a caboose attached to each, and in which it permits passengers to ride, but it is further stated that the plaintiff, desiring to go to Belmont, "they, said agents and servants, permitted him to enter said caboose car as a passenger, who, then and there, agreed and undertook to carry and convey him," etc. This petition states more than enough to show that plaintiff was rightfully on the train, and the objection made to it is without a particle of merit.

Again, the proposition that the defendant owes no duty whatever to one riding upon a freight train, unless he is a passenger in the full sense of the term, does not meet with our approval. If one is riding on a freight train, with the consent of the agents in charge thereof, the company owes him a duty, though he is there against the rules of the company. Shear. & Redf. on Neg. [4 Ed.] 489; 2 Woods' Ry. Law, 1045. Even to a trespasser, the defendant is liable for injuries inflicted for want of ordinary care, after the perilous position of the party is discovered. In no view of this case can it be said defendant owed no duty whatever to the plaintiff.

2. It is next insisted, and, indeed, the proposition lies at the foundation of all the objections made to the judgment in this case, that the conductor had no power to permit the boy to ride on the train, because the defendant's rules forbade the conductor to carry passengers on this particular train. From this the conclusion is sought to be made that the boy was wrongfully on the train and entitled to no care from defendant. It is to be observed here that contributory negligence on the part of the boy is not asserted, nor is it contended that he

knew of the rule prohibiting passengers from riding on this train. His mother knew that some of the freight trains did not carry passengers; but she is not suing, and that fact does not affect this suit.

The rule of law asserted on all hands is that the master is civilly liable for the negligence or wrongful act of his agent, when done in the course of the agent's employment, even though the master may have prohibited the agent from doing the act, of which complaint is made. *Garretzen v. Duenckel*, 50 Mo. 107; *Cousins v. Railroad*, 66 Mo. 576; *Ramsden v. Railroad*, 104 Mass. 120. The question here is not as to the general rule itself, but whether the act of the conductor, in allowing the boy to ride on the train, is within the scope of the conductor's employment.

A case often cited is that of *Walton v. Railroad*, 107 Mass. 108. There the plaintiff, a girl, nine years of age, was walking on a bridge with other girls. The driver of a horse car beckoned to the girls to get on. They got upon the platform and the girl was injured by the negligence of the driver. Speaking of the driver, it is said: "If, in violation of his instructions, he permits a person to ride without pay he is guilty of a breach of his duty as a servant. Such an act is not one outside of his duties, but is an act within the general scope of his agency, for which he is responsible to his master. In the case at bar, the invitation to the plaintiff to ride was an act within the general scope of the driver's employment, and, if she accepted it innocently, she was not a trespasser. It is immaterial that the driver was acting contrary to his instructions." Other cases are to the same effect. *Railroad v. Wheeler*, 35 Kan. 185; *Dunn v. Railroad, supra; Railroad v. Brown*, 14 N. E. Rep. 202.

In *Sherman v. Railroad*, 72 Mo. 64, a boy got on a freight train, without paying, or intending to pay, any fare. His presence was not discovered by those in

charge of the train until he had traveled some ten miles. This court then said: "The train being one on which passengers were allowed to be carried, although plaintiff boarded the train without permission or the knowledge of the conductor, yet, as the conductor, after he became aware of his presence on the train, suffered him to remain, he was entitled to the same protection as if he had paid his fare."

*Muehlhausen v. Railroad*, 91 Mo. 332, was a case where a boy was run over and killed by a street car. An instruction was given, and, by this court, approved, in which it was, in substance, said, that although the boy had not paid any fare, still, if he was on the car, with the knowledge and permission of defendant's employe in charge of the car, then the deceased was a passenger, and entitled to the same care and protection as if he had paid his fare.

Now in this case, the conductor had entire charge of the train. In its management, he acted for, and represented, the defendant. It was a part of his duties to see that persons did not ride upon it, either with or without the payment of fare. How, therefore, can it be said, his act in allowing the boy to ride upon the train was beyond or outside the scope of his employment? It was an act directly within the line of his duty. He made breach of his duty towards his master, but that is a matter of no consequence here. To all outward appearance, as well as in point of fact, he was master of the train. The defendant, therefore, cannot escape liability in this case on the ground that the conductor had no authority to permit the boy to ride on the train. It also follows from what has been said, as well as from the authorities cited, that the defendant did owe a duty to the boy. It owed a duty to him, even on the theory that he was not, in the full sense of the term, a passenger. The instruction goes no further than to require of defendant ordinary care, and of this defendant ought not to

complain. The authorities cited go far to show that the case might have been submitted to the jury on the theory that the boy was entitled to all the care of a passenger, but as instructions were not given on that theory we need say no more upon this question.

3.   As to the evidence there can be no doubt but it tends to show negligence on the part of the train men. They knew there was a freight train just behind them, that it would reach them on a long down grade, that the freight trains were liable to and frequently did break in two, and then not be under the complete control of the engineer, and that there was frost on the rails. The evidence tends to show that the rear train could have been heard for two miles, and that there was ample time to have given the danger signal further from the standing caboose. Under the circumstances, to flag the train at a distance of only a quarter of a mile from the caboose, and without warning to the boy, who knew nothing of what was going on, furnishes evidence of even gross negligence.

4.   The objection made to the instruction given is, that it does not submit the question whether the boy was rightfully on the train. It requires a finding that he was on the train with the knowledge and consent of the agent in charge of it. If he was on the train with the knowledge and consent of the agents who had charge of it, he was not wrongfully there—much less was he a trespasser. Even had he known that he was on the train in violation of the defendant's rules, still, being there with the consent of the master of the train, the company owed him a duty, at least ordinary care, and for a breach of that duty it is liable in damages. The instructions asked by defendant and refused are so far at war with what has been said that it is useless to speak of them in detail.

The judgment is affirmed.   All concur