OF THE

## STATE OF IOWA.

AT

DES MOINES, MAY TERM, A. D. 1902.

AND IN THE FIFTY-SEVENTH YEAR OF THE STATE.

GEORGE B. SPENCE v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Who is Passenger:** APPARENT AUTHORITY OF CONDUCTOR. Plaintiff who had formerly been a railroad employe, when passengers were carried on all trains, purchased a ticket, and was accepted by the conductor of a construction train as a passenger thereon, which was against defendant's orders, except on official permit, of which plaintiff had not notice. Plaintiff knew nothing about the construction train, except that he had ridden thereon before as a passenger, and that other passengers were on the train when he took it. Construction trains were not on defendant's passenger time tables, but two other freight trains were, and the train in question looked like an ordinary freight train, except that it carried only a single car. *Held,* that the conductor had such an apparent authority to accept plaintiff as a passenger that such acceptance made him a passenger, and as such he could recover for injuries caused by defendant's negligence.

*The figures on the left of the syllabi refer to corresponding figures on the margin of the case at the place where the point of the syllabi is decided.

*Appeal from Muscatine District Court.*—Hon. P. B. Wolfe, Judge.

WEDNESDAY, MAY 14, 1902.

ACTION at law to recover damages for personal injuries sustained by plaintiff in a collision between trains on defendant's line of road. From a verdict and judgment for plaintiff, defendant appeals.—*Affirmed.*

*Carroll Wright, John I. Dille* and *Carskadden & Burke* for appellant.

*E. M. Warner* for appellee.

DEEMER, J.—There was evidence tending to show, and from which the jury may have found, that on the morning of November 18, 1898, an accident had occurred on defendant's line of road at Moscow, the first station west of Wilton; that one Roberts, who had charge of the construction train at Wilton, was directed to take his train and crew and go to the scene of the accident, to clear away the wreck; that pursuant to these orders Roberts made up a train, consisting of a locomotive and an ordinary freight caboose, similar in all respects to those in which defendant carried passengers on its freight trains, and placed the same on the main line of defendant's road. At this time what is known as defendant's "Fast Mail," which did not stop at Wilton, was due. Some precautions were taken against accident, but they were evidently not sufficient, for in a few minutes the fast mail came along at its usual high rate of speed, and, before the engineer thereof could stop it, it ran into the construction train, in the caboose of which were a number of men, including plaintiff, and as

a result of the collision plaintiff received the injuries of which he complains. Plaintiff is an elderly man, and 25 or 30 years before the accident had been a railway employe, working at that occupation for twelve or more years. At the time of the collision he was a painter by trade, and was employed in painting two houses and a barn at Moscow. He had frequently ridden on this construction train, as had others, and on the morning in question asked Conductor Roberts for permission to ride on the train. His request was granted, and, having procured a ticket, he took his seat in the caboose with others, and was in this position when the accident occurred. At the time when plaintiff was engaged in railroading, passengers were carried on all trains; but he knew that at the time in question printed schedules were posted in depots and given employes, permitting passengers to ride on certain trains, and forbidding them to ride on others; but he did not know what this schedule showed, and knew nothing about the construction train, except as he had ridden thereon before, as a passenger, had seen others do the same, and was permitted and directed by Conductor Roberts to take the train, to get to his work at Moscow. As a matter of fact trainmen were not allowed to carry passengers on construction trains, except when the passenger had a permit from the superintendent or train dispatcher, nor upon any freight trains except what were known as "Numbers 51 and 52." Defendant's negligence is practically conceded, and the only serious question made by defendant is that plaintiff was not a passenger when he received his injuries, and therefore cannot recover. The decided cases on similar facts are apparently in some conflict, and the question has not heretofore received extended consideration by this court. It must be conceded, of course, that this train was not intended by defendant as a passenger train, and persons were not allowed to ride on it as such except under the conditions named. It does not appear, however,

that plaintiff had notice of these conditions, and there is evidence which affirmatively shows that he did not. Construction or work trains do not appear on the time tables of the defendant company, but these tables did show that trains 51 and 52 were permitted to carry passengers. The train in question presented the appearance of an ordinary freight train which carried passengers, except that it was made up of an engine and the single car or caboose. Conductors, however, had the right to permit passengers to ride, even on construction trains, with the consent of the superintendent or train dispatcher. There was no rule of absolute exclusion from the train. We have a case, then, where there is no absolute prohibition of the train's carrying passengers; where the schedules posted in the ticket office did not show whether or not this particular train carried passengers; where the train in question not only carried plaintiff, but others, as passengers; where the conductor in charge of the train, and with apparent authority, at least, to determine who might ride thereon, permitted plaintiff to take a position in the caboose as a passenger; where the plaintiff did not know of any limitations on the conductor's authority, and where there was nothing about the train to indicate that it did not carry passengers the same as other freight trains of the defendant company; and where plaintiff did not in fact know of what was posted in the ticket office, but relied on the authority of the conductor to permit him to ride upon the train. In *Fitzgibbon v. Railway Co.*, 108 Iowa, 614, where the facts were stronger against the plaintiff than in this case, we said, among other things: "Even if the train was not made up for the carriage of passengers in general, the defendant, through its conductor, had the right to accept such passengers; and if the conductor did accept the plaintiff as a passenger, he will be treated as such, in the absence of notice or knowledge on his part of any limitations upon the conductor's authority." A number of authorities were

cited in support of this rule, which we think fairly sustain it, although it must be conceded that there is not entire harmony in the adjudicated cases on this subject. We are now asked to modify that rule, or, at least, to limit its application; and in support of the argument a number of cases are cited, to some of which we shall refer during the course of the opinion. Taking it for granted that, as a matter of fact, the construction or work train was not intended for ordinary passengers, and that no one could ride on it as such without the consent of the train dispatcher or superintendent, and that plaintiff did not have this consent, we have to inquire whether or not the fact that plaintiff and others did ride on the train as passengers, and that plaintiff was authorized by the conductor in charge of this particular train on the occasion in question to ride thereon as a passenger, and that plaintiff did not know of any limitations on the authority of the conductor, made plaintiff a passenger on that train. The general rule with reference to limitations upon the authority of an agent is well understood. A master is bound by the acts of his agent within the general scope of his authority; and while persons dealing with an agent are, as a general rule, bound to know the extent of his authority, yet they may reasonably take the visible and apparent interpretation of that authority by the principal himself as the true one, and as the one by which he chooses to be bound. It therefore follows that third persons, who have reasonably and in good faith relied upon the apparent authority of the agent, cannot be prejudiced by any limitations, of which they had no notice, and could not with reasonable diligence have ascertained. Mechem, Agency, section 279; *Palmer v. Cheney*, 35 Iowa, 281; *City of Davenport v. Peoria Marine & Fire Ins. Co.*, 17 Iowa, 276. The conductor of the construction train had entire charge thereof, and in its management acted for and represented the defendant. He had apparent authority to say who should and who should

.not ride- thereon. True, his instructions were limited, but the jury evidently found that plaintiff had no notice of these limitations. Of course the railway company had the right to use separate trains for freight and for passengers, but if it undertook to carry passengers on some of its freight trains, and a person about to board one, having no knowledge that it did not carry passengers, is authorized and permitted by the conductor in charge to do so, he is, we think, justified in presuming that such permission is within the scope of the agent's authority; and the person so boarding the train is not a trespasser, but a passenger. With these rules in mind we are the better prepared to consider the cases cited by defendant's counsel. In *Eaton v. Railroad Co.*, 57 N. Y. 382 (15 Am. Rep. 513), the car in which plaintiff rode, on invitation of the conductor, was not such as the defendant company usually used for the carriage of passengers. It is described in the opinion as "a storeroom" used for carrying provisions; and there was no evidence that passengers either habitually or occasionally rode in the car. It also appeared that the defendant company had made a complete division of its freight and passenger business; that no conductor had authority to carry passengers on freight trains; and that plaintiff had, or should have had, knowledge of this division of defendant's business. Moreover, the condition of the car was held to be such as to give notice that it was not intended for passengers. The court held on this state of facts that the conductor of the "coal train" did not have apparent authority to accept plaintiff as a passenger. The facts clearly distinguish that case from the one now before us. In *Railroad Co. v. Barnes*, 137 Ind. Sup. 306 (36 N. E. Rep. 1092), the road had not been opened for public travel, and the court held the conductor could not open "an imperfect and incomplete road." In *Powers v. Railroad Co.*, 153 Mass. 188 (26 N. E. Rep. 446), there was a complete division of defendant's business, and it was held that the conductor of a

freight train did not have apparent authority to accept
passengers thereon.   *Wilton v. Railroad Co.*, 107 Mass. 108
(9 Am. Rep. 11), cited in the *Fitzgibbon Case*, was ap-
proved and distinguished on the ground that the car on
which plaintiff rode in that case was for the carriage of
passengers, although, as a matter of fact, the driver of the
car had no authority to accept him as a passenger.   In
*Railway Co. v. Moore*, 49 Tex. 31 (30 Am. Rep. 98), the
defendant knew that passengers were not allowed on plain-
tiff's freight trains, and that conductors had no authority
to accept him as such except on special conditions.  There
was also a complete division by the company of its freight
and passenger business.  In *Cooper v. Railroad Co.*, 136 Ind.
Sup. 366 (36 N. E. Rep. 272), the plaintiff went upon the
train with the consent of the conductor to assist the brake-
man.  Neither the conductor nor the brakeman had author-
ity to employ assistance.   Plaintiff was manifestly upon
the train by sufferance of the defendant's employes, and
was not a passenger, nor was he accepted as such.   In
*Smith v. Railroad Co.*, 124 Ind. 394 (24 N. E. Rep. 753),
there was a complete separation of defendant's freight
and passenger business; and it was not shown that plain-
tiff did not know when he went on the train that it did
not carry passengers.   *Railroad Co. v. Lynch*, 8 Civ. App.
513 (28 S. W. Rep. 252), is another Texas case, wherein it
appeared there was a complete division of freight and
passenger business, and plaintiff was held to know that
the conductor of a freight train had no authority to accept
him as a passenger.   *Cook v. Navigation Co.*, 76 Tex. 353
(13 S. W. Rep. 475, 18 Am. St. Rep. 52), is a tugboat case,
and *Gulf Co. v. Dawkins*, 77 Tex. 228 (13 S. W. Rep. 982);
*Hoar v. Railroad Co.*, 70 Me. 65 (35 Am. Rep. 299);
*Willis v. Railroad Co.*, 120 N. C. 508 (26 S. E. Rep. 784);
and *Railway Co. v. Bolling*, 59 Ark. 395 (27 S. W. Rep.
492, 27 L. R. A. 190, 43 Am. St. Rep. 38),— are "hand car"
cases.   These appliances, as every one well knows, are not

intended for the carriage of passengers or persons other than employes. *Railway Co. v. Black* 87, Tex. 160 (27 S. W. Rep. 118), is another case where there was a complete separation between freight and passenger business, and Black was held to a knowledge of this fact. In that case it is said: "If, however, a railroad company permits its freight trains to carry passengers, then they are bound to such passengers to the same extent as if carried by their regular passenger trains, excepting such inconveniences and risks as are peculiarly incident to this means of transportation. Although a railroad company may not authorize the carriage of persons on its freight trains, or may prohibit it, yet if the servants carry passengers on such trains, to the knowledge of the company's officers authorized to make and enforce rules, or if they are carried to that extent that such officers, in a proper discharge of their duties, should know of the facts, and no effort is made to stop it, then a passenger is authorized to presume that it is permitted by the comany, and will be protected as a passenger on such trains. But it cannot be said that a disobedience of orders can annul the order, except upon the principle that the officers, knowing of the violation, ratify and waive the rule forbidding it. Whatever falls short of this will not serve to confer authority upon or enlarge the power of the agent." The other Texas cases to which defendant refers are all based on this distinction. *Vide St. Louis Railway Co. v. White,* — Tex. Civ. App. — (34 S . W. Rep. 1042); *Wilcox v. Railroad Co.,* — Tex. Civ. App. — (38 S. W. Rep. 379). In the last case plaintiff was riding on the footboard of the "switch engine" when injured. It is manifest from this review of the authorities that none of them are exactly in point, and that none call for a modification of the rule announced in the *Fitzgibbon Case.* Defendant had not made a complete separation of its freight and passenger business. It carried passengers on some of its freight trains, and in cars

exactly similar in all respects to the one which plaintiff took.   Plaintiff had no notice of any limitations on the conductor's authority, and the posted notices did not indicate that the train in question did not carry passengers. The conductor had the right to take passengers on this train, under certain conditions, but plaintiff had no notice of these conditions.   He and others had frequently ridden on this train as a passenger, and we think, under all the circumstances, the conductor had the apparent right to accept him as a passenger.   These conclusions find ample support in the authorities.   See *Dunn v. Railway Co.*, 58 Me. 187 (4 Am. Rep. 267); *Lucas v. Railway Co.*, 33 Wis. 41 (14 Am. Rep. 735); *Louisville & N. R. Railroad Co. v. Hailey*, — Tenn. Sup. — (27 L. R. A. 549); *Railroad Co. v. Brown*, 123 Ill. 162 (14 N. E. Rep. 197, 5 Am. St. Rep. 510); *Everett v. Railway Co.*, 9 Utah, 340 (34 Pac. Rep. 289;) *Wilton v. Railroad Co.*, 107 Mass. 108 (9 Am. Rep. 11); *Railway Co. v. Caldwell*, 74 Pa. 421; *Creed v. Railroad Co.*, 86 Pa. 139 (27 Am. Rep. 693); *Hanson v. Transportation Co.*, 38 La. Ann. 111 (58 Am. Rep. 162); *McGee v. Railway Co.*, 92 Mo. 208 (4 S. W. Rep. 739, 1 Am. St. Rep. 706); *Sherman v. Railroad Co.*, 72 Mo. 65 (37 Am. Rep 423); *Railroad Co. v. Wheeler*, 35 Kan. 185 (10 Pac. Rep. 461); *Railroad Co. v. Derby*, 14 How. 468 (14 L. Ed. 502); *Railroad Co. v. Muhling*, 30 Ill. 9 (81 Am. Dec. 336); *Railway Co. v. Doane*, 115 Ind. 435 (17 N. E. Rep. 913, 1 L. R. A. 158, 7 Am. St. Rep. 451); *Whitehead v. Railway Co.*, 99 Mo. Sup. 263 (11 S. W. Rep. 751, 6 L. R. A. 409); *Jacobus v. Railway Co.*, 20 Minn. 125, Gil. 110 (18 Am. Rep. 360); *Rosenbaum v. Railroad Co.*, 38 Minn. 173 (36 N. W. Rep. 447, 8 Am. St. Rep. 653); *Railroad Co. v. Frazer*, 55 Kan. 582 (40 Pac. Rep. 923); *Railroad Co. v. Yarbrough*, 83 Ala. 283 (3 South Rep. 447, 3 Am. St. Rep. 715); *Edgerton v. Railroad Co.*, 39 N. Y. 227.   Appellant insists, however, that the testimony shows, without conflict, that plaintiff knew the train did not carry passengers.   This is evidently

a mistake; for plaintiff testified in express terms that he knew nothing of the rules of the company, or of that train, except as the conductor in charge of it told him, and that he did not know that the conductor had no authority to carry passengers on that train.   The instructions given by the trial judge were in harmony with the views herein expressed; and, as there is no error in the record, the judgment is AFFIRMED.