## ST. LOUIS & S. F. R. CO. v. NICHOLS.

No. 1821. Opinion Filed July 22, 1913.

Rehearing Denied November 4, 1913.

(136 Pac. 159.)

1. **CARRIERS—Duty to Passengers.** A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill. Section 800, Rev. Laws 1910.

2.  **SAME—Injury to Passengers—Burden of Proof.** In a suit by a passenger for injuries occasioned by the derailment and wreck of a train, proof of such derailment and wreck, the circumstances thereof, and the injury occasioned thereby makes a prima facie case of negligence and casts upon the carrier the burden of showing that it was not negligent.

3.  **SAME—Passengers—Essentials of Relation.** The payment of fare or the possession of a ticket or pass, although the usual evidence of the right of a person to ride on a train, are not absolutely essential to the creation of the relation of passenger and carrier, so far as relates to the carrier's liability for injuries to a passenger.

4.  **SAME—Caretaker.** N. procured a shipping contract for the transportation of a horse from Lawton to Oklahoma City, which on its face contained strong indications that he was entitled to free passage on the train for the purpose of caring for the horse. He loaded the horse into a car with the assistance of a trainman and placed in the car a water bucket and feed for the horse. The reverse side of the contract, called the pass provision, had not been signed and made effective. He presented himself in the caboose of the train and the conductor saw his live-stock contract and made no objection to his riding. N. was not asked for, nor did he pay any fare, although provided with ample means. The train did not in fact carry passengers, except those with live-stock passes. Nor did the conductor have authority to permit persons to ride. These facts were not known to N. After the train had proceeded about 40 miles it was wrecked and N. was injured while sitting in the caboose. **Held,** that under the circumstances N., having taken passage in good faith with the acquiescence of the conductor, and without knowing that he was not entitled to ride on the train, nor that the conductor had no authority to permit it, was a passenger and was entitled to the protection and care due such on the ground that it was within the apparent scope of the authority of the conductor to receive him as a passenger.

5.  **SAME—Trespasser.** An intruder or trespasser, or one who gains his presence on a train surreptitiously, fraudulently, or deceitfully or through collusion or illegal contrivance with the train crew, does not thereby become a passenger and entitled to the care due passengers.

6.  **RELEASE—Action for Personal Injuries—Evidence—Sufficiency.** Evidence examined in the opinion, and held sufficient to justify the jury in avoiding a release of damages signed by plaintiff.

(Syllabus by Brewer, C.)

*Error from District Court, Oklahoma County;*
*John J. Carney, Judge.*

Action by Gilbert A. Nichols against the St. Louis & San Francisco Railroad Company, a corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

*W. F. Evans* and *R. A. Kleinschmidt,* for plaintiff in error.

*Moss & Turner,* for defendant in error.

Opinion by BREWER, C. All the questions in this case grow out of or relate to the following two: (1) Was the plaintiff below a passenger on defendant's train at the time of his injury? (2) Was the jury justified in avoiding an alleged settlement for the damages growing out of such injuries?

On March 28, 1908, the plaintiff entered into a live-stock contract to ship a horse from Lawton to Oklahoma City; the contract was in the usual form and was signed by plaintiff and the station agent. Regulations on the reverse, or back side, of the contract pertaining to the transportation of a caretaker were not signed by either party. The plaintiff, with the assistance of trainmen loaded the horse into a box car, depositing therein feed and a bucket for watering the animal. Before the train started he entered the caboose, meeting the conductor in charge of the train and other employees. The conductor examined his shipping contract and knew that plaintiff was transporting a horse on the train. No objection to his riding or demand for fare was made and none was paid, although the plaintiff had with him ample means. The undisputed evidence shows: After the freight train had proceeded to within a few miles of Cement, that it attached to, and carried with it, in front of the engine, a coal car filled with stone, higher than the edges of the car in the center. That in a mile or two after the car had been taken on, while the train was moving downgrade and rapidly, the car of stone, the engine, the tender, and the other cars were derailed and wrecked at a trestle; several employees being badly hurt. Broken flanges from the rims of car wheels showing old rusty fractures were found scattered along the track for several hundred yards. The plaintiff was thrown from his seat in the caboose against the front end, striking his head, rendering him unconscious for a short time. When he revived sufficiently he got out, assisted the injured and in the flagging of trains. A wrecker coming out from Lawton in an hour or two brought a claim agent, who, upon the scene of the wreck, obtained the plaintiff's

signature to a paper agreeing to settle and fully compromise all his claims for damages for the sum of $20; the same to be later paid him. After arriving at Oklahoma City and receiving medical attention and advice, the $20 was refused upon tender made by the defendant, and later this suit for $1,999.99 alleged as the damages was brought.

When the above facts were shown in evidence, a *prima facie* case of negligence was established, together with the right of the plaintiff to recover for any damages sustained, if the relation existing between him and the company was that of carrier and passenger. It may be well to observe at this point that, after the *prima facie* case of negligence had been established by the evidence, the burden was then cast on the defendant to show that it had not been negligent in the premises, and nowhere in the evidence is an attempt made, or a word of proof introduced, tending to relieve the defendant of this burden.

This relieves us, to start with, from the necessity of discussing alleged errors of the court in defining the duty and degree of care imposed by law, where the relation of carrier and passenger exists, since the court might have very correctly informed the jury, under the evidence in this case, that liability existed, if plaintiff was a passenger, unless precluded by his alleged settlement.

"A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." (Section 429, Comp. Laws 1909; section 800, Rev. Laws 1910.)

*C., R. I. & P. Ry. Co. v. Stibbs,* 17 Okla. 97, 87 Pac. 293; *Lane v. C., O. & G. R. Co.,* 19 Okla. 324, 91 Pac. 883; *St. L. & S. F. R. Co. v. Gosnell,* 23 Okla. 588, 101 Pac. 1126, 22 L. R. A. (N. S.) 892; *St. L. & S. F. R. Co. v. Kerns, post,* 136 Pac. 169. For rule and valuable discussion, see *Indianapolis & St. L. R. Co. v. Horst,* 93 U. S. 291, 23 L. Ed. 898.

In a suit by a passenger for injuries occasioned by the derailment and wreck of a train, proof of such derailment and wreck, the circumstances thereof, and the injury occasioned there-

by makes a *prima facie* case of negligence and casts upon the carrier the burden of showing that it was not negligent. Hutchinson on Carriers, vol. 3, sec. 1413 *et seq.* Was the plaintiff a passenger?

The payment of fare or possession of a ticket or pass, although the usual evidence of the right of a person to ride on a train, are not absolutely essential to the creation of the relation of passenger and carrier, so far as relates to the carrier's liability for injuries to a passenger. *Simmons v. Oregon R. Co.,* 41 Ore. 151, 69 Pac. 440, 1022; Hutchinson on Carriers, vol. 2, sec. 1019.

The live-stock contract made with the company, in the main body thereof, after designating the company as party of the first part and the shipper as party of the second part, contained scattered through it the following expressions:

"That, for and in consideration of the consideration hereafter named, party of the first part will transport for the said party of the second part and the *parties in charge thereof* as hereinafter provided." (Italics ours.)

The shipper agreed: to "select the car or cars" and after stock is loaded, and before it leaves the station, "will again examine said car or cars and will see that all doors * * * are closed and fastened and afterwards kept so closed and fastened as to prevent the escape of live stock therefrom;" that shipper "will load, unload, and when necessary reload said stock and feed, water, and attend to same at his own risk and expense while the same are in the cars of the company," and the second party "shall bear all damages from his negligence or failure to do any of the things which he herein contracts to do. * * *" In section 12 of the contract it is said:

"In consideration of free transportation for person or persons to accompany the live stock * * * it is agreed that the said cars and said live stock contained therein will and shall be in the sole charge of such person * * * for the purpose of attention to and care of the said live stock," etc.

After securing the shipping contract referred to, the plaintiff loaded his horse into a car and put his feed and water bucket therein so as to give the horse care and attention. He then pre-

sented himself in the caboose for passage on the same train and exhibited his contract to the conductor in charge of the train. He had no notice from the company, its station agent or the conductor, that the train did not carry passengers nor that he was not entitled to be carried thereon free. He was not asked for fare, but his presence and right to passage were acquiesced in. No objection was raised, and the conductor in charge of defendant's train very likely supposed, as plaintiff did, that he had a right to go on the train. But it is vehemently urged that the train did not carry passengers, and that the rules of the company did not allow persons to ride on it, and that the conductor had no authority to permit it, and his acquiescence amounted to nothing. This argument is based on the fact that the freight charged was for the weight of the horse at so much per hundred-weight. It is admitted that, if the charge had been at a car load rate, plaintiff would have been entitled to free transportation and to passage on that train. It is probably true that under the rules of the company the plaintiff was not entitled to free passage, but it is not shown that he knew, or that a word was said to him by any one, about such rules or regulations. And the excerpts from the shipping contract, and much else that has been said on this point, is not for the purpose of showing that he was entitled to free passage, or in fact to passage at all, but to show that from the contract and the conduct of the company's agents he had a reasonable and well-grounded right to believe that he was entitled to passage on that particular train; that he acted in good faith; and that under the circumstances, if he did not in fact have such right, it was the duty of the company to so inform him, which was not done. We think that, assuming that the contract did not entitle plaintiff to free passage, that this train did not ordinarily carry passengers, and that the conductor was without authority to agree to his passage, yet that under the circumstances the plaintiff had the right to, and it was perfectly reasonable for him to suppose that the conductor was acting within his powers and within the general scope of his employment. In other words, that it was within the apparent authority of the conductor of the train to allow plaintiff to ride thereon

and thereby to create the relation of passenger and carrier between him and the company. This case rests on the apparent or implied authority of defendant's agent in accepting him as a passenger and the good faith of the plaintiff in becoming such.

Of course an intruder or trespasser, or one who surreptitiously, fraudulently, or deceitfully gains his presence on a train, cannot thereby become a passenger. Nor can he become such through collusion or illegal contrivance with the train crew, but none of these things are even claimed here. There is an abundance of authorities in support of the view stated above. *Whitehead v. St. L., I. M. & S. R. Co.,* 99 Mo. 263, 11 S. W. 751, 6 L. R. A. 409, and cases cited; *Lucas v. M. & St. P. R. Co.,* 33 Wis. 41, 14 Am. Rep. 735; *Alabama G. S. R. Co. v. Yarbrough,* 83 Ala. 238, 3 South. 447, 3 Am. St. Rep. 715; *Lake Shore & M. S. R. Co. v. Brown,* 123 Ill. 162, 14 N. E. 197, 5 Am. St. Rep. 510; *Everett v. Oregon, S. L. & U. N. R. Co.,* 9 Utah, 340, 34 Pac. 289; *Schuyler v. Southern Pac. Co.,* 37 Utah, 612, 109 Pac. 1025; *Simmons v. Oregon R. Co.,* 41 Ore. 151, 69 Pac. 440, 1022; *Fitzgibbon v. Chi. & N. W. R. Co.,* 119 Iowa, 261, 93 N. W. 276; *Spence v. Chi. R. Co.,* 117 Iowa, 1, 90 N. W. 346; *Denison & S. R. Co. v. Johnston,* 36 Tex. Civ. App. 115, 81 S. W. 780; *St. Joseph & W. R. Co. v. Wheeler,* 35 Kan. 185, 10 Pac. 461; *Chi., K. & W. R. Co. v. Frazer,* 55 Kan. 582, 40 Pac. 923.

2. The jury found under the evidence that the settlement pleaded in defense had been obtained by improper means at a time when, by reason of plaintiff's injuries, and the shock occasioned by the wreck, and the sight and circumstances thereof, plaintiff was not mentally competent to contract relative to so important a matter. On the question of the settlement and plaintiff's mental condition at and following his injuries, numerous witnesses, including a number of experts, have testified. This evidence fills nearly 100 pages of the record. The plaintiff's version of the facts which led up to his signing the release is that the agent tried to settle with him for the probable damages to his horse, and he told the agent he did not know

that the horse was in any way damaged.  That the agent then asked him if he was injured, and he thought at the time and told the agent he was not hurt sufficiently to amount to any damage.  That the agent then told him, as he had lost a great deal of time in the wreck, and had been of service to the company in looking out for trains and otherwise, that the company would remunerate him for these things, and handed him a folded piece of paper with two or three lines of writing he had put on it and told him to sign it and he would have the agent at Oklahoma City pay him $20 whenever he called for it.  The plaintiff said he told the agent he was not damaged or injured and made no charge for what assistance he had rendered, but if they wanted to give him $20 he had no objection.  This was all denied by the claim agent.  This all occurred at the wreck in a short time after it happened.  When plaintiff arrived in Oklahoma City that evening he immediately was seen by a physician, and during the next several months had the services of at least five different physicians.  One of the physicians, who roomed next door to plaintiff, saw and examined him about 7:30 of the day of the injury and treated him continuously for some weeks, after detailing his condition as to physical wounds, his mental and nervous condition in a few hours after the injury, and for weeks thereafter, stated as an expert that these facts, taken in connection with what occurred at the wreck, showed that the plaintiff was not mentally normal or competent to understand and appreciate the nature and consequences of the release contract he signed; that he was not competent to contract.  Upon hypothetical questions being asked, two or three other physicians corroborated this view.  Some of the experts for the defense contradicted it.  There was as much evidence on one side as on the other.  It was for the jury to decide the matter.  The jury had the right to consider all the circumstances surrounding this settlement; the insignificant amount agreed upon (nothing was ever accepted by him although offered); the condition of plaintiff's physical injuries at the time, and they were by no means unimportant; his nervous state in the presence of a bad wreck with wounded men about him, one

of whom was pinioned under the engine and whom plaintiff tried to get out but was unable to assist; the fact that, although badly bruised with contusions on his person, he confidently maintained that he was not hurt and continued for days to so claim, even to his physician, who states that at that time he was in a serious condition. All these circumtances lend strength to the testimony of the medical men that at the scene of the wreck, and for some time afterwards, he did not have the normal, sound use of his mind. There is no doubt in our minds but that the jury was justified in avoiding the release. The case of *St. L. & S. F. R. Co. v. Richards,* 23 Okla. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032, in some of its phases is in point. *A., T. & S. F. Ry. Co. v. Peck,* 79 Kan. 413, 100 Pac. 54.

The instructions on this point are complained of, but they are substantially correct. The jury were told that, if the release was obtained while the plaintiff was suffering from such nervous shock, that he did not understand or comprehend its purport or meaning, or if obtained through the false and fraudulent representation of the claim agent, plaintiff relying thereon, that in either event it was not binding. The phraseology might be improved, but they were not improper in the meaning conveyed to the jury under the facts of the case.

3. Complaint is made that photographs were admitted in evidence, showing the derailed train, overturned engine, and broken cars and the derailed car of stone in front of the engine. The evidence shows the pictures to be correct reproductions of the situation, taken the same day of the wreck and while the conditions thereof remained unchanged. There was no error in admitting the evidence. It was proper to prove what the pictures show, and they afforded very convincing proof of the same. *St. L. & S. F. R. Co. v. Dale,* 36 Okla. 114, 128 Pac. 137.

4. What we have said on the first branch of the case renders it unnecessary to discuss the refusal of the court to admit in evidence rules of the company, showing that the conductor violated his duty in permitting plaintiff to ride, and other evidence of the same general import.

5. The complaint that counsel in his argument to the jury commenced to explain the peculiar amount sued for by saying that the federal court could have taken jurisdiction if it was greater has some merit. Counsel should stay within the record, especially in important cases; but there does not seem to have been any improper motive, and it evidently had no effect one way or the other.

6. Nor was the verdict excessive. There was proof that $500 had been expended for medical care; at least 2½ months' total loss of time; that previously plaintiff earned from $300 to $500 per month in his profession of dentistry; that his ability to follow his profession had been practically destroyed. All this, saying nothing of pain and suffering, leads us to hold that no just complaint can be made as to the amount of the verdict.

There are other minor points urged in the brief, but, while we will not take them up categorically and consider them, they have all had careful attention and are thought to be insufficient to reverse the case and not of sufficient general importance to the profession as to justify extended discussion.

The judgment should be affirmed.

By the Court: It is so ordered.