## DICKINSON v. BRYANT.

No. 8815—Opinion Filed April 23, 1918.

(172 Pac. 432.)

### 1. Carriers—Carriage of Passengers—Duty—Exceptions.

Generally the contract of a carrier is that it will carry the passenger safely, and in a proper carriage, and afford him safe and convenient means for entering cars and alighting therefrom, but it does not contract to render him personal service or attention beyond that. The recognized exception to the general rule is passengers who by reason of illness, great age, or other infirmity are unable to help themselves.

### 2. Same—Necessity of Personal Service or Attention—Question for Jury.

Whether the plaintiff below belongs to one of the classes within the exception to the general rule is a question of fact, and in this case the same was properly submitted to the jury.

### 3. Same—"Railroad Ticket."

The ticket issued by a railroad company to a passenger is not a contract, but only evidence of the right of transportation furnished to the passenger by virtue of the contract made by him with the company for transportation.

### 4. Same—Passengers — Ejection — Evidence—Damages—Excessive Damages.

Evidence in this case examined, and held, that the plaintiff below was entitled to be transported from Texola to Oklahoma City, upon the train on which she was riding, and that her ejection therefrom was unlawful, for which the company was liable to her for whatever damage she sustained. And this question of damage having been submitted to the jury, and the same not appearing excessive and within the issues and justified by the evidence, the judgment of the lower court is affirmed.

(Syllabus by Hooker, C.)

Error from District Court, Oklahoma County; W. C. Crow, Judge.

Action by Mrs. J. H. Bryant against J. M. Dickinson, receiver for the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

R. J. Roberts, C. O. Blake, W. H. Moore, and J. E. DuMars, for plaintiff in error.

Vaught & Brewer, for defendant in error.

Opinion by HOOKER, C. Mrs. Bryant recovered a judgment in the lower court for the alleged wrongful ejection from one of the trains of the plaintiff in error, and to reverse which the company has appealed here. The facts are as follows:

On September 26, 1916, Mrs. Bryant purchased a ticket at the office of the company in Texola for passage to Oklahoma City, and also a half ticket for her ten year old boy for the same purpose. The train upon which she had been waiting was late, and in her hurry to get aboard the train she left her purse on the platform at Texola, which contained all the money she had and her tickets, and immediately upon entering the train she was informed that some one on the outside was attempting to deliver to her her purse containing her tickets and her money, and while the train was standing still she requested the conductor to get her purse for her and explained to him that her purse contained all the money she had and the tickets for transportation for herself and son to Oklahoma City. She was induced to believe by the acts and conduct of the conductor that he would procure the same for her, and she made no further effort herself to obtain the possession thereof. Shortly after the train started en route to Oklahoma City the conductor or auditor came through the train collecting the tickets from the passengers, and she again told him that she had requested him to get her ticket for her at Texola, and explained the situation to him, but she was informed that she would be compelled to get off the train at the next station, which was Erick, and that she could not ride without either paying her fare or producing a ticket, and being told that fact she expressed a willingness to alight from the train, which she did at the station of Erick. Just as she was alighting from said train the ticket agent at Erick handed to the conductor in charge of said train a message from the ticket agent at Texola, which stated in substance that Mrs. Bryant had paid for a ticket for transportation from Texola to Oklahoma City upon that train, and that said ticket was in his possession at Texola, and that she was entitled to be transported to Oklahoma City upon that train. This the conductor refused to recognize and compelled her to alight and await the next train, which was some time the next day, and to procure the ticket itself from a party who brought it from Texola to Erick overland.

The evidence further shows that the plaintiff below was a large fleshy woman, unwieldy in her movements, afflicted with rheumatism, and that it was with some difficulty that she moved from place to place, and it is asserted that this fact was known by the agents of the company in charge of

said train, and that her condition was such that it was the duty of the company to render her assistance in traveling, and that on account of her physical condition it was the duty of the conductor, when requested to get her purse containing the tickets, to have procured the same for her.

The evidence further shows that the plaintiff below alighted from the train at Erick about 4 o'clock in the afternoon of September 26th, and was compelled to remain there until about 9 o'clock on September 27th before the next train coming to Oklahoma City arrived there, and most of which time sne spent around the depot, and that she suffered some inconvenience, and she alleges that on account of her ejection from said train, the humiliation and mortification caused to her thereby, and the inconvenience and hardship which caused her physical pain, suffering, and sickness, that she was damaged in the sum of $2,600.50.

The trial court gave to the jury two instructions, which were excepted to by the company, which instructions are as follows:

"You are instructed that if you find from a preponderance of the evidence that at or about the time mentioned in plaintiff's petition, she bought tickets at Texola, Okla., entitling her and her little boy to be carried on defendant's line of railroad from Texola, Okla., to Oklahoma City, Okla., and when defendant's train approached Texola plaintiff boarded same, but mislaid her pocketbook containing her tickets and money on the depot platform, and got on the train without them, but believing she had them, and upon entering the car was informed by a passenger in the presence and hearing of the conductor that she had left her purse lying outside, and if you further believe, from such preponderance of the evidence, that the plaintiff was in a feeble physical condition, and because of bodily infirmities could move about with great difficulty, and that her condition was seen and known by the defendant's conductor in charge of its train, and plaintiff informed him that she had left her purse outside, and that it contained her tickets and all the money she had, and did this while the train was standing at the depot, and asked the conductor if he would please get them for her and there was time remaining before the time for the train to start, for him to have gotten them, or to have told her he would not, so that others might do so, and such conductor, without saying that he would not get them, started down the aisle of the coach toward the depot as if to get the purse containing the tickets, and did not do so, and did not tell plaintiff he would not do so, but came back to where she was in the coach just as the train was ready to start, and was asked by her whether he had gotten the purse and tickets, it was then, under such circumstances, if you find they existed, the duty of the conductor in charge of the defendant's train to have then and there told plaintiff she would not be carried; and to have then and there put her off, or afforded her an opportunity to get off the train. And, if you further find that the circumstances mentioned occurred, as stated, and the said conductor did not advise plaintiff to get off there at Texola, but carried her on to Erick, Okla., and as the train stopped, defendant's station and ticket agent handed the conductor a telegram from the defendant's ticket agent at Texola, stating in substance that plaintiff's purse, money, and tickets were in his possession, and to carry plaintiff and her little boy on to Oklahoma City, the destination named in the tickets, it would have been, under all these circumstances, if you find from a preponderance of the evidence, they all existed, the duty of the defendant to have carried plaintiff on to Oklahoma City, and it would have been a violation of defendant's duty to plaintiff, and negligence upon the part of the company, to eject her at Erick; and if you find that all these circumstances existed, and that, notwithstanding the same, the conductor ejected plaintiff at Erick, his act would have constituted negligence upon the part of defendant, and a violation of its duty toward plaintiff, and you should find the issues for plaintiff."

"You are instructed that, ordinarily, a carrier of passengers is under no duty to give to a passenger personal services or attention; but there is an exception to this general rule, in this, that if by reason of illness, great age, or other bodily infirmity, the passenger is unable to help herself, and this is known to the carrier, a duty upon its part may arise, to render to the passenger such reasonable personal services and attentions as are commensurate with the circumstances, situation, and necessities of such passenger at the time existing and known to the carrier. And in this case, whether or not the evidence brings it within the exception stated is for you to determine from all the facts, circumstances, and evidence before you."

The plaintiff in error has assigned several reasons why this cause should be reversed: First, it is contended that no duty rested upon the conductor in charge of this train to procure for her her pocketbook or purse containing her money and her tickets; second, that no duty rested upon the company to carry her upon said train without her transportation; third, her injuries were not the proximate result of the negligence complained of; fourth, no proof of the value of any lost time, and that the damages are excessive as awarded to her by the jury; and, fifth, erroneous instructions given by the court and excepted to by the plaintiff in error.

This court in St. L. & S. F. Ry. Co. v. Fick, 47 Okla. 530, 149 Pac. 1126, said:

"Generally, the contract of a carrier is that it will carry the passenger safely and in a proper carriage, and afford him safe and convenient means for entering cars and alighting therefrom; but it does not contract to render him personal service or attention beyond that. The recognized exceptions to the general rule are passengers who, by reason of illness, great age or other infirmity, are unable to help themselves."

And in 4 R. C. L. p. 1160, it is said:

"While, as a general rule, a carrier of passengers is not bound to anticipate or to guard against an injurious result which would happen only to a person of peculiar sensitiveness, yet there are numerous decisions to the effect that a sick or aged person, a delicate woman, a lame man or a child, or one not in full possession of his faculties, is entitled to more attention and care from a carrier than one in good health and under no disability, and that where physical or mental weakness or disability is apparent to, or is brought to the attention of the carrier, the high degree of care which the law imposes upon him requires the carrier to take notice of the disability and conduct himself accordingly."

The defendant in error contends that she at the time was one of the classes of individuals within the exception to the rule. The evidence introduced by her sought to show that she was rheumatic and otherwise afflicted; that she moved with great difficulty, and on account of her physical size and her physical ailment, it became the duty of the company as a common carrier to show her more care than the ordinary passenger. This question was properly submitted to the jury, and the jury was in a better condition, having seen the plaintiff below, to determine that issue than this court. There being some evidence which would justify the conclusion that she was within the excepted class, and the jury having so found, and the verdict being approved by the court under our established rule, we cannot interfere with the verdict of the jury; there being some evidence to support it.

It is contended by the defendant in error that at the time she informed the conductor that she had left her pocketbook upon the platform, and that some one on the outside was trying to deliver it to her, and requested him to get it for her, he, by his conduct, led her to believe that he would do so, and in the light of the testimony here we cannot say that she was not justified in so believing; but, be that as it may, when the conductor was notified through the agent at Erick by means of this telegram forwarded by the agent at Texola that this defendant in error had purchased a ticket which entitled her to transportation from Texola to Oklahoma City, and that ticket was in his possession as the agent of the company in Texola, we are of the opinion that the conductor of the train had no right or authority to compel her to alight from said train at Erick, but she had the right to be transported to Oklahoma City on that train, and in removing her at Erick a wrong was inflicted upon her to recover for which this action can be maintained.

This court in the case of St. L. & S. F. R. Co. v. Nichols, 39 Okla. 522, 136 Pac. 159, said:

"The payment of fare or the possession of a ticket or pass, although the usual evidence of the right of a person to ride on a train, are not absolutely essential to the creation of the relation of passenger and carrier, so far as relates to the carrier's liability for injuries to a passenger"—citing Simmons v. Oregon R. Co., 41 Or. 151, 69 Pac. 440, 1022; Hutchinson on Carriers, vol. 2, § 1019.

In 4 R. C. L. p. 1112, it is said:

"With regard to the nature of a ticket in the ordinary form issued by a common carrier, the authorities are, apparently at least, in irreconcilable conflict. According to numerous decisions such a ticket does not constitute the contract between the parties unless made so by express agreement. It is in the nature of a receipt for the passage money, and is generally only a token, the purpose of which is to enable the carrier to recognize the bearer as the person entitled to be carried. Such ticket is considered not to be the evidence of the terms of the contract of passage and not conclusive of the right to passage, but only a token that the ordinary contract implied by law has been entered into. * * * According to this view one who makes a valid contract with a carrier is entitled to passage according to its terms, even though the ticket or transfer given is defective in failing to express these terms." (Abundant authorities are cited in the text supporting the doctrine above announced. However, there are abundant authorities to the effect that as between a passenger and the carrier's conductor, the passenger's ticket or transfer is conclusive evidence of the passenger's right to ride, and constitutes the contract between himself and the carrier.)

Also in 5 R. C. L. p. 125, it is said:

"While the decisions are in direct and palpable conflict on the question, the better rule, and that supported by the weight of recent authority, appears to be that a passenger who is ejected because the ticket presented by him is invalid, where such invalidity is through the fault of the carrier, may recover for the injuries sustained by reason

of the ejection. This is on the principle that it is the contract and not the ticket that gives the right to transportation, and that consequently a person who makes a valid contract is entitled to passage according to its terms, though the face of the ticket furnished him may not in any true sense express the contract; and since the passenger is not required in law, nor allowed in fact, to print or write or stamp the ticket, but the carrier alone has that right, the authorities supporting this view hold that the passenger is authorized to believe and presume that such right will be properly exercised, and that the ticket when delivered is a faithful expression of the contract as made. He has, therefore, a right to rely on the statements and acts of the ticket agent, and is not bound, as a matter of law, to read or examine his transportation before taking the train but it is for the jury to say whether he was negligent in not doing so. It is the duty of a conductor, when doubt arises as to a ticket, to listen to and accept any reasonable explanation offered by the holder, and if he does not, he takes the chance of rendering the company liable for an illegal expulsion."

And in 5 Cyc. p. 570, it is said:

"There has been some diversity of opinion as to whether a railroad ticket, or other similar ticket, entitling the passenger to transportation, is to be deemed a contract. The ordinary ticket is not a contract, but is evidence of the right to transportation furnished to the passenger in consequence of a contract to carry, and intended to enable the passenger to secure transportation, under the rules and regulations of the carrier in performance of such contract. * * * As to the ordinary ticket, however, it has been held that it does not preclude parol evidence to show the contract of transportation. On the other hand, the ticket is prima facie evidence of the passenger's right to transportation. * * *"

Under the authorities above cited and quoted we are of the opinion that the ticket is merely evidence of the making of a contract, and that when the company knew of the existence of the fact here shown it was the duty of the company to transport the defendant in error to her destination at Oklahoma City.

The damages recovered here in the sum of $750 we cannot say are unreasonable for the humiliation and wounded feelings suffered by her on account of this unlawful ejection. The fact that she went voluntarily from the train before being removed by force cannot affect her right to recover in this action. Taking into consideration her physical condition, the inconvenience suffered by one afflicted with rheumatism, and being so unwieldy in body, together with the other attendant circumstances, we do not feel at liberty to interfere with this verdict on account of the amount thereof. The damages here awarded are fully sustained by the evidence and the pleadings and are not excessive.

The instructions of the court complained of fairly present the law of the case to the jury as we view it, and finding no error in this record prejudicial to the rights of the plaintiff in error, this cause is affirmed.

By the Court: It is so ordered.